THE PEOPLE OF THE STATE OF NEW YORK EX REL. GEORGE BARNARD, ASSIGNEE OF GEORGE CLARKE, *v.* EDWARD WEMPLE, COMPTROLLER OF THE STATE OF NEW YORK.

*Relevy of a tax by the comptroller — what irregularity in the assessment of the property cannot be thus cured — chap. 453 of 1885 — the cancellation of a tax sale does not cancel the tax.*

Chapter 453 of the Laws of 1885, which authorizes the comptroller of the State of New York to relevy the correct amount of certain taxes which have been returned to him, and are illegal by reason of any irregularity or defect therein, or omission of statutory requirements, does not cover the case where the original assessment was invalid by reason of its having been made against a non-resident owner instead of against the resident occupants of the lands in question.

The cancellation of an invalid tax sale by the comptroller does not cancel the taxes, for the non-payment of which such sale was had. Such taxes remain as originally levied, and being unpaid it is the duty of the comptroller to carry them forward upon his books for future action.

CERTIORARI to review the action and determination of the comp-
troller in relevying certain taxes upon lands of George Clarke, the
relator's assignor, after the cancellation by the comptroller of the
sale of such lands for non-payment of taxes. Also in " carrying
forward " upon the comptroller's books, to be made the basis for
future sale, a portion of the taxes as to which the sale was made
and canceled. The order under which such writ was issued was
made at a Special Term of the Supreme Court held at Albany
March 27, 1888.

The facts are as follows : George Clarke, a resident of the county
of Otsego, was the owner of several parcels of land in the town
and village of Catskill, Greene county. The taxes thereon for the
years 1877 to 1882, inclusive, were not paid and were returned to
the comptroller for non-payment and were by him admitted and
entered upon his books. In December, 1885, all of said lots were
sold by the comptroller at the State tax sale for all of the unpaid
taxes and were bought in by the State. George Clarke having made
a general assignment for the benefit of creditors to the relator, the
latter applied to the comptroller to cancel said sale because of cer-
tain irregularities. The comptroller upon examination did cancel
it in December, 1887, as to all the lots. Some of the taxes were
considered by the comptroller to be valid and some invalid, but
there was no lot as to which there was not at least one invalid tax,
and, therefore, the comptroller set aside the entire sale in pursuance
of section 83, chapter 427, Laws of 1855. (1.) Certain of the lots
were imperfectly described, and because of this error the comp-
troller charged back to the county of Greene the amount of the
taxes upon them in pursuance of section 84 of the chapter cited.
(2.) Certain of the taxes upon some of the lots appeared to be
regularly laid and valid, and the comptroller carried them forward
in his books as valid taxes remaining unpaid. (3.) Certain other of
the taxes were upon lots occupied by the tenants of George Clarke ;
these lots were not assessed to the occupants, but were assessed as
non-resident land, except that in some cases the name George Clarke
was placed at the head of the column in which the lots were
described, and in other cases the name George Clarke was placed in
said column preceding the description of each lot. (4.) In some
cases the assessment was valid except that the oath of the assessors

was defective in some years, and was wholly omitted in the year 1880. The comptroller with respect to the taxes in cases 3 and 4, acting under the assumed authority of chapter 453 Laws of 1885, relevied the same at the original amount and added thereto five per cent. To review his action in this respect this *certiorari* was issued.

*J. B. Olney*, for the relator.

*Z. S. Westbrook*, for the comptroller.

LANDON, J.:

The comptroller made the relevy of taxes under chapter 453, Laws of 1885, the second section of which amends section 22 of chapter 427, Laws of 1855, entitled " An act in relation to the collection of taxes on lands of non-residents, and to provide for the sale of such lands for unpaid taxes."

Section 22, as thus amended, provides that: " Whenever any unpaid tax, levied upon an assessment of land by a town or ward having a legal right to assess the same, which may have been returned to and admitted by the comptroller, shall be ascertained, either before or after sale thereof, to be illegal or void by reason of any irregularity or defect in, or omission of, statutory requirements for creating or collecting such tax, the comptroller is hereby empowered and directed, whenever deemed practicable by him, to relevy the correct amount of such tax, and add thereto the five per cent allowed by law to be added by the collector, which aggregate amount of tax and charge with interest thereon, at ten per cent per annum, from the first day of August following the admission of such illegal or void tax, shall thereupon be due and payable and shall be subject to existing provisions of law governing the collection of and sale for unpaid taxes by the comptroller; but no tax arising from a double assessment, the taxes levied on one of which shall be satisfactorily proven to the comptroller to have been duly paid, shall be subject to such relevy. Such relevy of any invalid or defective tax shall be conclusive evidence of its regularity and legality, and any such tax so levied shall be treated and subject to payment as though such sale had not been made, and if allowed to remain unpaid, the land shall be sold therefor."

If the town by its assessors made a valid assessment of those lands, and the taxes thereafter levied thereupon are ascertained to be void because of some omission to observe the statutory requirements, subsequent to the assessment, then we have a valid assessment and an invalid tax. The tax being void it would be competent for the legislature by subsequent enactment to provide that a valid tax be laid upon this valid assessment, and it could direct it to be done by the comptroller instead of the local officers. If the original assessment was void, then any tax relevied thereupon by the comptroller would be void. This, for the reason that in making the assessment due process of law, as the statute provides it, must not be denied to the taxpayer. (*Stuart* v. *Palmer*, 74 N. Y., 183; *Matter of McPherson*, 104 id., 321; *Remsen* v. *Wheeler*, 105 id., 579.) The legislature may by retroactive enactment cure the omission of any act which it might have originally dispensed with. (*Ensign* v. *Barse*, 107 N. Y., 329; *People* v. *Turner*, 49 Hun, 466.) But, as the assessment is the basis upon which the State deprives a man of his property, an opportunity to redress his grievance in respect to it must be in some way by law accorded him, otherwise he would be deprived of his property without due process of law.

It follows, therefore, that, with respect to the taxes which were ascertained by the comptroller to be invalid because the assessor's oath was defective or altogether omitted, but with respect to which no error is alleged until after the "grievance days" had elapsed, that the relevy by the comptroller was proper, and in that respect his determination is affirmed.

It appears that several of the parcels of land were occupied by resident tenants of the non-resident owner. These parcels ought to have been assessed to the resident occupants, not as lands of the non-resident owner, nor as lands of a non-resident. (*Hilton* v. *Fonda*, 86 N. Y., 339; *Stewart* v. *Crysler*, 100 id., 378.) They were, in fact, assessed to George Clarke, the non-resident owner, as lands of a non-resident. That is, they were entered in the assessment-roll in a part thereof separate from other assessments; in the first column of which was entered the name of George Clarke, together with a designation or description of the lands; in the second column was entered the quantity, and in the third the value; thus following the statute with respect to the assessment of lands

of non-residents, except that the name of the owner was added. The cases last cited are to the effect that this assessment was improperly made. If any act which was required by law to be performed by the assessors, and which is thereby made the condition of a valid assessment was omitted by them, it renders the assessment void. (*Matter of McMahon* v. *Palmer*, 102 N. Y., 176, 182.)

Referring to the statute of 1885 above quoted, we find that these unpaid taxes were levied upon an assessment of land by a town having a legal right to assess the land. That is, the assessors of the town of Catskill had jurisdiction to make an assessment upon these lands and the legal right to assess them at some valuation. We find that the taxes levied upon these assessments have been returned to and admitted by the comptroller, and that after the tax sale he ascertained the taxes were illegal and void by reason of an irregularity or defect in, or omission of statutory requirements for creating such taxes. The conditions which the statute enumerates seem to be present. But the assessors did not make and enter the assessment upon the assessment-roll in conformity with the statute. It is undoubtedly competent for the legislature to provide that such land should be assessed in the manner here adopted by the assessors. But any method of assessment must provide for some sort of opportunity for the parties interested to be heard with respect to it, and no opportunity is accorded with respect to assessments made in the manner here attempted. The act of 1885 does not make or provide for making a reassessment.

The statute (1 R. S., m. p. 393, §§ 19, 20), provides that the assessors shall complete and copy the assessment-roll before the first of August, and then give notice of the time and place where the same may be seen and examined by any person interested until the third Tuesday of August, and that they will then meet at a specified time and place to review their assessment. Then and there any person conceiving himself aggrieved may be heard and his alleged grievance will be adjudicated upon, and if well founded, will presumably be redressed. He then and there has his day in court. Suppose the occupants of these lands had examined the copy of the assessment-roll before the third Tuesday of August, they would have found no assessment against them, and, therefore, would not have

been interested further. If George Clarke, the non-resident owner, had examined it he would not have found any valid assessment against him or his lands, and, therefore, would not have been legally interested to complain. To validate the assessment by retroactive legislation would be to establish its amount against the lands without statutory notice to the persons interested in its amount. We think that cannot be done. The relevy upon the occupied lands assessed as lands of a non-resident, or of George Clarke, cannot be upheld.

As to the taxes which had been properly assessed and were carried forward by the comptroller in his books as taxes to be collected upon future tax sales, no valid objection exists. The cancellation of the invalid sale for their collection with other taxes does not cancel these taxes. They remain as originally levied, and since they are unpaid, the comptroller properly carried them forward upon his books for his future action. The determination and action of the comptroller is affirmed except as to the taxes relevied by him upon the assessments upon the occupied lands in the cases where such lands were not assessed to the occupants, and reversed as to such cases.

An order in accordance with these views, specifying the particulars affected, may be presented for settlement. No costs to either party.

LEARNED, P. J., and INGALLS, J., concurred.

Order affirmed, except as to taxes relevied upon lands where lands were not assessed to occupant, and as to those reversed. No costs.