### PEOPLE ex rel. POWELL v. SUPERVISORS OF NASSAU COUNTY.

(Supreme Court, Special Term, Nassau County.   May 18, 1907.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—TAXATION—ASSESSMENT.
   Tax Law, Laws 1896, p. 815, c. 908, §§ 36, 54, providing for the reassessing of land illegally assessed and for an assessment at the valuation for the previous year, having in substance provided for a notice and hearing before the "fixing" of the valuation, is not unconstitutional as providing for an assessment without notice.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Taxation, § 894.]

2. TAXATION—ASSESSMENT—REASSESSMENT.
   Tax Law, Laws 1896, p. 815, c. 908, § 54 provides for the reassessment of lands previously illegally assessed.  Laws 1898, p. 1336, c. 588, creating the county of Nassau from a portion of the county of Queens, gave all unpaid taxes in the territory in question to the new county.  Held, that the reassessment by the county of Nassau of land originally illegally assessed by the county of Queens was authorized.

3. SAME—VACATION OF ASSESSMENT—GROUNDS—ERROR IN VALUATION.
   The fact that property is valued for taxation at a sum in excess of its value is no ground for a vacation of the assessment, where it is not proportionately higher than other property on the same roll.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 815.]

4. SAME—REVIEW—CERTIORARI.
   Laws 1896, p. 882, c. 908, § 250, in relation to certiorari to review an assessment for taxation, provides that the petition must show that application was made to the proper officers to correct the assessment.  Held,

104 N.Y.S.—23

that application cannot be made to the assessing officers to correct some errors, and, on their refusal, certiorari be maintained to review other errors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 892.]

Certiorari by the people, on the relation of Joshua W. Powell, to review the action of the board of supervisors of Nassau county in reassessing certain lands. Writ dismissed.

Edward M. & Paul Grout, for plaintiff.
Halstead Scudder, for defendants.

JAYCOX, J. The first contention of the relator is that section 54 of the tax law (chapter 908, p. 815, Laws 1896), under which the defendants acted in making such assessment, is unconstitutional, in that it provides for an assessment without notice, or that, if notice is provided for, such notice is an idle form, as at the hearing the board is required to assess the property at a valuation previously fixed and determined by statute. If either of these contentions is well founded, the statute is void.

In the examination of the statute the whole statute should be read together, and regard should be had to the purpose which the Legislature intended to effectuate. The purpose of the Legislature was to provide a method by which taxes which had been erroneously or illegally assessed might be legally and effectually reassessed, to the end that all property subject to taxation might bear its just proportion of the public burdens. As lack of notice has always been recognized as one of the grounds upon which assessments have been held illegal and vacated, it is only fair to assume that it was its intention to remedy just such a defect, and this could be done only by providing for a legal and effectual notice. If the statute had merely directed a reassessment, without direction as to who should make it or the manner in which notice should be given, naturally the general provisions of the statute would be sought to ascertain how, by whom, and upon what notice such reassessment should be made. Now, the Legislature having named the body by which such reassessment should be made, and directed to some extent the manner and method of reassessment, all points unprovided for and all doubts as to the execution of the direction should be respectively ascertained and resolved by reference to the other provisions of the statute. Bearing in mind that the unconstitutionality of a statute must be clear and manifest before a court should declare it so, and where any reasonable doubt exists as to its constitutionality the statute will be upheld (Kerrigan v. Force, 68 N. Y. 381), let us apply the rule above suggested for the construction of section 54 of the tax law.

The first direction found in section 54 is that property upon which the tax has been canceled shall be placed upon the assessment roll. No directions are given as to what part of the roll (resident or non-resident), and no directions as to descriptions, etc. Very minute directions as to those details are found in article 2 of the tax law, and, although not made a part of section 54, they must be complied with, or no valid reassessment will be made. Now, having complied with

the general provisions of the law as to the manner in which the property is entered upon the roll, the next step is to put down opposite it a value. This section provides that the value of the previous year, if any, shall be used for this purpose. The learned counsel for the defendants contends that this means only a value legally fixed upon the previous roll. As the court views it, there is no need of passing upon that. Merely adopt the language of the statute in its most literal sense: "The valuation, if any, fixed by the assessors for such previous year." It requires no great ingenuity to think of instances where no value is fixed. In the present instance, if the premises had been assessed as one parcel, no value would have been fixed for the present form of assessment. Therefore the next step in the reassessment, as in the original assessment, is to set down a value, either the value fixed by the assessors or the one decided upon by the board of supervisors. This is but a tentative value, and may be changed by the board upon the hearing provided for, as in case of an original assessment; the statute providing that upon such hearing the board shall have, as to such property, "all the powers of assessors of a tax district in reviewing and correcting an assessment roll." This plainly indicates that the valuation at first placed upon the property is not considered as being finally determined upon, but of this further evidence may be found in the statute.

As to original assessments it is provided (both as to lands of residents and lands of nonresidents) that opposite the land they shall "set down the full value" of such property. No hearing has yet been had, but a value is adopted and "set down," and no one contends this portion of the statute is unconstitutional because a hearing is provided for and upon that hearing the value is "fixed"; i. e., finally determined upon. The procedure, as I construe the statute, is the same under section 54. A value is placed opposite the property, either that of the previous year or one adopted by the board, and then before "fixing such valuation the board of supervisors shall give to the owners of such property a notice of at least five days and an opportunity to be heard, and on such hearing the board shall have as to such property all the powers of assessors of a tax district in reviewing and correcting an assessment roll." It will be seen that the word "fix" is used in the sense of "finally determine upon." The original values in the assessment rolls the statute does not refer to as "fixed." As to the original assessment of the lands of residents the statute (section 21) says the value shall be "set down," and as to the lands of nonresidents the statute says (section 29) the assessors shall "place" the value opposite the land, and the value is not referred to as "fixed" until the hearing is had, and then the statute says (section 36) :

"The assessors shall, after said examination, fix the value of the property of the complainant and for that purpose may increase or decrease or diminish the assessment."

By section 54 the direction is to place the same on the roll of the current year at the valuation thereof, if any, fixed by the assessors for such preceding year; and, in case no valuation was fixed by the assessors, such property shall be assessed (i. e., placed upon the roll—

see the use of the word "assessment" quoted above from section 36) as they may determine for the preceding year. The word "fixing" is not used in this section until it is used in the same sense and connection that "fix" is used in section 36, where it is used in the sense of a final determination. This is the correct meaning of the word "fix" as used in that connection. The Standard Dictionary defines "fix" as "to decide definitely; make sure; settle; determine; as, 'his fate will be fixed to-night.'" This section (54), if these views are correct, only provides for the fixing of the value for reassessment after notice and hearing duly had, and therefore violates no constitutional inhibition.

At the time of the original assessment, the lands in question having constituted a part of the county of Queens, and said taxes having been levied by the board of supervisors of Queens county before the county of Nassau was set off from said county of Queens, said lands having been included in the county of Nassau, it is now claimed by the relator that the board of supervisors of Nassau county have no power to make such reassessment, claiming that such reassessment is in effect a review of the action of the board of supervisors of Queens county. With this contention I cannot agree. The action of the board of supervisors of Queens county is not reviewed, changed, or altered by this reassessment. All the supervisors of Queens county did under the statute, so far as this assessment is concerned, was to fix the "rate per centum," and by section 54 of the tax law it is expressly provided that upon such reassessment such property shall be taxed at the rate per centum of the previous year. The previous assessment was not canceled because of any error of the board of supervisors of Queens county, but solely for errors of the board of assessors of the town of North Hempstead, now part of the county of Nassau. The act creating the county of Nassau (chapter 588, p. 1336, Laws 1898) provides for the "apportionment of the personal property of the county of Queens, including all unpaid arrears and taxes." The act further provides a method of division, and under this method all the unpaid taxes levied upon property located in that portion of the former county of Queens now included in the county of Nassau were given to the county of Nassau, and the judgment making such division decreed that:

"All such moneys shall be payable to, or collected by, the treasurer of the county of Nassau, with like effect as if said taxes had been levied by said county of Nassau and as if said sales had been made by its county treasurer."

The relator claims that under this division "the county of Nassau was given the same power to collect arrears which it would have possessed had it levied the taxes in the first instance." This, I think, is sufficient to sustain the action of the board of supervisors. It was the fair intendment of the statute and decree making the division to give to each county the same power and authority over the taxes assigned to it as was given to the other. There can be no question of the power of Queens county to reassess taxes levied before the division and assigned to it. Why should there be any discrimination against one county? But it is argued that the Legislature has power to make an unequal division. That is undoubtedly true; but I find here no

evidence of such intention, and I do not think the courts should be acute in finding such intention, or overzealous in enforcing such inequality when found. But in the present instance the finding such unequal division does not benefit Queens county in any way, but merely enables this property to escape its just burden of taxation. Nassau county having been awarded these taxes and authorized to collect them, everything necessary to make this award and authorization effectual may be implied. People v. Chapin, 105 N. Y. 316, 11 N. E. 510; Mayor v. Sands, 105 N. Y. 210, 11 N. E. 820.

The reassessment is also attacked upon the ground that the valuation of $20 per lot is more than the full value of such lots. While upon the proof before me I would be inclined to find that that is not more than the full value, I do not think it necessary to do so. The proof adduced satisfies me that the relator, under such valuation, is required to pay no more than his share or proportion of the taxes for that year, or, in other words, that such assessment is not proportionately higher than that upon the other property upon the same roll, and therefore, even if such value is greater than it should be, affords no ground for vacating such assessment. People v. Carter, 109 N. Y. 576, 17 N. E. 222.

I think there is further reason why the relator cannot avail himself of any alleged inequality. The section which authorizes the presentation of a petition for a writ of certiorari (section 250, c. 908, p. 882, Laws of 1896) provides that such petition must show "that application has been made in due time to the proper officers to correct such assessment." That application must have been to correct the very error now complained of. Application cannot be made to the assessing officers to correct some errors, and then, upon their refusal, seek by certiorari to review other errors. These proceedings do not show that at the time of the hearing before the board of supervisors the relator made any objection to the assessment by reason of overvaluation, or discussed that question at all. He at that time apparently rested his entire claim upon the grounds hereinbefore discussed.

The defendants are entitled to judgment dismissing the writ, with $50 costs.