The People of the State of New York ex rel. Pardon C. Rickey, as Receiver of The Manufacturers National Bank of Mechanicville, Substituted in Place of John G. Rogers, Respondent, *v.* Edward J. Hunt, as Commissioner of Accounts and as Assessor of the City of Mechanicville, and Others, as the Assessing Officers and as Constituting the Common Council of the City of Mechanicville, Appellants. (Proceeding No. 1.)

The People of the State of New York ex rel. The Manufacturers National Bank of Mechanicville, by Pardon C. Rickey, as Receiver, Respondent, *v.* Edward J. Hunt, as Commissioner of Accounts and as Assessor of the City of Mechanicville, and Others, as the Assessing Officers and as Constituting the Common Council of the City of Mechanicville, Appellants. (Proceeding No. 2.)

Third Department, May 15, 1934.

*Patrick J. Keniry,* for the appellants.

*William T. Moore,* for the respondent.

Heffernan, J. These two certiorari proceedings, designated Nos. 1 and 2, respectively, were instituted to review certain real estate assessments made by appellants, the assessors of the city of Mechan-

icville, for the year 1933. Proceeding No. 1 was begun in the name of one Rogers. Proceeding No. 2 was commenced by Rickey, as receiver of the Manufacturers National Bank. Thereafter, by stipulation, Rickey, as receiver, was substituted in place of Rogers. Although the proceedings were never consolidated they have been treated as one, were tried together and involve the same questions. The court at Special Term appointed a referee to take the evidence and report, and these appeals are from judgments of confirmation.

In the petition for the writs respondent alleged that the assessments were illegal, erroneous by reason of overvaluation and that the properties were assessed unequally with and disproportionately to all other property in the city of Mechanicville.

On the trial no testimony was offered indicating any illegality in the assessments. No claim was made that the premises were assessed unequally with or disproportionately to other properties in Mechanicville. In fact respondent's counsel made this concession: " Mr. Moore. The relator has not claimed and does not claim that the properties involved in these proceedings are assessed unequally with or disproportionately to other properties of the city of Mechanicville." The sole question to be considered, therefore, is whether or not the properties were overvalued.

Assessments on eleven distinct pieces of property were reviewed in these proceedings. The assessments as fixed by the assessors were confirmed as to seven parcels and reduced as to four. The seven parcels which were confirmed are insignificant, the total assessments amounting to only $10,550. The assessments on the other four pieces totalled $82,800 and were reduced to $59,500. Hence we have to deal with two pieces of property in Proceeding No. 1 and two in Proceeding No. 2. In Proceeding No. 1 the parcels are described as Flanagan Estate, 87–89 North Main street, and Flanagan Estate, 91–97 North Main street. The parcels in Proceeding No. 2 are described as the Manufacturers National Bank Building and the Grand Central Hotel.

In the proceedings before the referee each side swore two expert witnesses on value.

In Proceeding No. 1 the first property to be considered is that known as 91–97 North Main street. It is a three-story brick building with a frontage of ninety-seven feet and a depth of sixty-five feet. It consists of four stores and eight living apartments. The property was assessed by the city in the sum of $23,000; the respondent claimed the value to be $12,000; the court fixed the value at $18,800. One of the witnesses for respondent valued this property at $33,600, exclusive of the land; the other witness placed the value thereon at $24,000, including the land. The testimony of both of

these witnesses, therefore, shows the property is worth more than that for which it was assessed. One of appellants' witnesses gives the value of the property as $39,393.64; the other values it at $36,000.

The second piece of property is known as 87–89 North Main street. It is adjacent to the building just described. It has a frontage of forty-five feet and is sixty-five feet deep. It is a three-story building containing two stores and four living apartments. It is assessed by the city in the sum of $10,300; the respondent claimed the value as $6,000; the court fixed the value at $7,400. According to one of respondent's witnesses this property is worth $17,500 and in addition a fair value for the land which he did not estimate; the other witness for respondent gave the value as $12,100. One of appellants' witnesses placed the total value of the building as $14,480.20 together with a land value of $3,750, or a total sound value of $18,230; the other witness testified that the value of the property was $18,000.

In Proceeding No. 2 the first piece of property to be considered is the Manufacturers National Bank Building. The city assessed that property at $33,500; the respondent claimed its value to be $20,000. The court fixed the value at $21,350. This bank has been in the hands of a receiver since August 9, 1931. One of respondent's witnesses said that the building was useless unless used as a bank; the other gave no testimony as to the value. One of appellants' witnesses gave the value as $59,582.37; the other placed it at $58,000. Before the institution of this proceeding the receiver carried $40,000 fire insurance on the property. After the commencement of the proceeding he reduced it to $20,000. In his report to the Comptroller of the Currency of the United States the receiver placed a value of $45,000 on the property. He received an offer of $40,000 for it. He was asked if he would consider taking $25,000 for the building and declined to do so but said he would consider $50,000.

The second piece of property to be considered in Proceeding No. 2 is the Grand Central Hotel property. This is a three-story brick and frame building, approximately sixty feet by one hundred feet. The first floor contains a sitting room, office, barroom and a kitchen; the second floor contains twenty-three bedrooms; the third floor contains ten bedrooms. The property was assessed by the city at $16,000; the respondent claimed the value to be $8,000; the court fixed the value at $12,000. One of respondent's witnesses valued the property at $36,000; the other witness gave the value as $12,000 and the referee accepted his judgment. One of appellants' witnesses gave the value as $28,791.12; the other placed it at $23,000.

The respondent is evidently seeking to reduce the assessments on the various pieces of property because they are not rented. That is due largely to his own failure to make repairs. However, that is not a reason to reduce assessments. (*People ex rel. Greenwood* v. *Feitner,* 77 App. Div. 428; *People ex rel. Lehigh Valley Railway Co.* v. *Burke,* 247 N. Y. 227.) The fact that the bank building can only be used for that purpose does not justify a reduction. That question was considered in *People ex rel. New York Stock Exchange Building Co.* v. *Cantor* (221 App. Div. 193; affd., 248 N. Y. 533). Then too we have the rule that a party who assails the validity of an assessment must make it conclusively appear that the method by which the assessors arrived at the result complained of was incorrect, and that the assessment does not represent the fair value of the property assessed. (*People ex rel. Westchester F. I. Co.* v. *Davenport,* 91 N. Y. 574; *People ex rel. Jamaica Water Supply Co.* v. *Tax Comrs.,* 196 id. 39.) The determination of the assessors will not be disturbed, unless it clearly appears that injustice has been done the relator and that the assessment does not represent the fair value of the property assessed. If the evidence leaves the matter in doubt it is the province of the assessors to determine the value and amount of property liable to taxation. (*People ex rel. Haile* v. *Brundage,* 195 App. Div. 745.)

Applying the rules of law to which I have called attention it seems to me that the assessors acted properly and that the conclusions of the referee and the Special Term cannot be sustained. Both the referee and the Special Term found inequality in the assessments. Not only is there no evidence in the record to sustain such a finding but that is not an issue here. As I have already pointed out, respondent's counsel expressly conceded that there is no issue of inequality.

However, there is a more compelling reason for the dismissal of these writs. By virtue of the stipulation of respondent's counsel his client has no grievance to be redressed. He concedes that the assessments are equal and proportionate with all other assessments in the city. Therefore, his client is not aggrieved. The question of illegality is out of the case. Under section 290 of the Tax Law the respondent must establish three propositions: (1) That there is in fact an overvaluation; (2) that he is aggrieved thereby; (3) the extent of the injury. Even if it be assumed that respondent has shown a mere overvaluation, that is not sufficient to entitle him to relief. He must also show that he is aggrieved by the assessment and the extent of the injury. If respondent's assessments are reduced here, obviously all other assessments in the city will be unequal and disproportionate to those of the respondent,

and consequently he will pay less than his just share of the taxes. Overvaluation is no ground for vacating the assessment. (*People ex rel. Powell* v. *Supervisors*, 54 Misc. 323.) It is only those who are prejudicially affected by errors committed in the assessment of property who have a right to a review thereof, and, in the absence of any showing of prejudice resulting from the assessment, a person has no such right and hence cannot complain of a failure to create any proper board for the purpose of reviewing assessments. (61 C. J. 783.)

The judgments appealed from should be reversed and the writs of certiorari dismissed, with costs to appellants.

HILL, P. J., RHODES, CRAPSER and BLISS, JJ., concur.

In each proceeding: Judgment reversed on the law and facts and the writ of certiorari dismissed, with costs to the appellants.

In proceeding No. 1: The court reverses findings of fact Nos. four, eight and twelve, contained in the court's decision.

The court also disapproves of and reverses the following conclusions of law contained in such decision, viz., one, two, three, five, six, seven, nine, ten and eleven.

The court finds as a fact that the assessors correctly assessed the two properties in question and that the relator has failed to show any illegality in such assessments or any overvaluation.

In proceeding No. 2: The court reverses findings of fact Nos. three, four, five, six, seventeen and nineteen, contained in the court's decision.

The court also disapproves of and reverses the following conclusions of law contained in such decision, viz., one, two, three, four, five, six, twelve, thirteen and fourteen.

The court finds as a fact that the assessors correctly assessed the two properties in question and that the relator has failed to show any illegality in such assessments or any overvaluation.