WESTERN NEW YORK & PENNSYLVANIA RAILWAY COMPANY, Plaintiff, *v.* CITY OF BUFFALO and JOHN R. PLUNKETT and Others, as Assessors of the City of Buffalo, Erie County, New York, Defendants.

Supreme Court, Erie County, April 29, 1941.

*Harold J. Adams* [*Carlos C. Alden* and *Percy R. Smith* of counsel], for the plaintiff.

*Edward J. Sullivan, Corporation Counsel* [*Herbert A. Hickman* of counsel], for the defendants.

VAUGHAN, J. This is an action to vacate and set aside certain reassessments made by the common council of the city of Buffalo upon real estate of the plaintiff and added to the assessment roll of the city of Buffalo for the current tax year 1940–1941.

The questions for determination are: Are the assessments covering the years 1909–1918, inclusive, and 1926–1939, inclusive, made and entered in the assessment roll for the current year 1940–1941 authorized under section 57 of the Tax Law upon the theory that the property had theretofore been erroneously or illegally assessed within the meaning and intent of that section? Are the defendants limited, as is claimed by the plaintiff, to an assessment for one year only as provided by section 24 of said law, upon the theory that the property was omitted from the assessment roll for the years under consideration? And, finally, can a reassessment be made for any year prior to the amendment to section 57 by chapter 629 of the Laws of 1926, by which the common council was authorized to reassess property erroneously or illegally assessed?

From the record in the Court of Appeals (281 N. Y. 639) in the certiorari proceeding brought by the plaintiff against the State Tax Commiss:on for the years 1909–1918, 1926–1936, and the final order in a like proceeding for the years 1937, 1938 and 1939, and stipulations made upon the trial of the instant case, it appears that the courts canceled the special franchise assessments for the crossings by bridges over Lord and Smith streets for each of the years 1909–1918, inclusive, and 1926–1939, inclusive, on the ground that at the point of crossing over the streets the railroad was prior in occupation to the streets; that reassessments for the occupation and crossing of North Division street for the years 1909–1916, Cornelia and Marilla streets for the years 1909–1918, 1926–1935 and on Bass alley for the year 1909, were also canceled on the ground that those streets had no existence at the points of the crossings. The assessments on the bridge over Buffalo river for each of the years 1909–1918 and 1926–1939 were also canceled on the ground that the Buffalo river at the point of crossing was not navigable and hence not a highway within the definition of special franchises, and the assessment on the seawall strip for the years 1917 and 1918 was canceled on the ground that the railway company had become the owner at the point of crossing prior to those years.

Pursuant to the decisions in those cases the city refunded to the plaintiff $89,257.80 on account of the taxes for the years 1909–1918, 1926–1936, and $7,742.26 on account of the taxes for the years 1937, 1938 and 1939, making a total refund of $97,000.06. The assessments in question included the value of the tangible structures and the improvements on the land which are the subject of the reassessments here involved.

Following the cancellations by the courts of the special franchise assessments above set forth, the common council of the city of

Buffalo, acting under section 57 of the Tax Law, reassessed the value of the tangible property for each of the years involved and the same were taxed at the city tax rate for the year in which each canceled assessment was originally made. The reassessments were made upon notice and a hearing to the relator, who appeared by counsel before the common council of the city and stated its objections to the proposed reassessments. Following the hearing the reassessment was made by the council by resolution which directed the assessors to place the same upon the assessment roll for the year 1940, the then current assessment roll. Pursuant to the resolution the reassessment was added to the assessment roll for the year 1940 and notice thereof given to the plaintiff. The reassessments of the tangible properties covering the years involved were at the values placed upon tangible properties by the State Tax Commission in making the special franchise assessments which were canceled by the courts. The properties as reassessed produced taxes totaling the sum of $35,803.48, which was paid by the plaintiff on July 30, 1940, under protest.

Plaintiff takes the position that the property assessed by the common council should be treated as property omitted from the assessment rolls and should be assessed as such under the provisions of section 24 of the Tax Law, or if it be held that the assessment was authorized under section 57 of said law, that the tax to be imposed be limited to the year preceding the year in which the property was reassessed and entered upon the assessment roll, and in no event for any year prior to 1927, as the common council had no authority to make reassessments prior to the amendment of section 57 by the Laws of 1926, and that if the statute be construed as permitting the imposition of a tax for the entire thirty-one years under consideration it is unconstitutional.

Plaintiff's authorities, decided under former tax laws, treat of instances where the property was not assessed as directed by statute. Instances cited are where the *land* was assessed when the owner was a resident of the tax district or an assessment for land against the *owner* where he was a non-resident and there was no occupant, or against one not the *owner* or *occupant*. Such attempted assessments have always been held as void on the ground that there was never any assessment against either the property, the owner or the occupant. There being no valid assessment, the property was treated as omitted from the assessment rolls. (*People ex rel. Barnard* v. *Wemple*, 53 Hun, 197; affd., 117 N. Y. 77; *Matter of Chadwick*, 59 App. Div. 334; *Cromwell* v. *MacLean*, 123 N. Y. 474; *Matter of Douglas* v. *Board of Supervisors*, 172 id. 309.)

Comparison shows how different such cases are from the one under consideration. Here there was no procedural defect in failing to comply with the requirements of the statute relative to special franchise assessments. No complaint is made that the tangible property was not properly described nor that it was not assessed to the true owner. The taxpayer was given notice of the assessment and afforded full opportunity to appear and be heard regarding the same. The property was not omitted from the assessment roll but was entered thereon in the column provided for special franchise assessments and throughout the entire period under consideration the plaintiff paid taxes thereon. As far as the evidence discloses the assessments were from a procedural standpoint in all respects regular. The assessments were canceled not because of any procedural defects but rather upon the ground that no special franchise existed at the locations in question and that, therefore, no jurisdiction resided in the Tax Commission to assess. In other words, the Tax Commission having erroneously determined the existence of facts essential to its jurisdiction, the assessments were void and the tax based thereon was illegal. (*People ex rel. Erie R. R. Co.* v. *State Tax Com.*, 246 N. Y. 322; *Elmhurst Fire Co.* v. *City of New York*, 213 id. 87.) It does not follow, however, that where the assessment is vacated because of lack of jurisdiction in the taxing body the right of reassessment is limited by section 24 nor would failure on the part of the local assessors to assess the property during the years under consideration alter the situation.

All real property is assessable by the local assessors in each tax district except in those instances where it is assessed by the State Tax Commission as a part of the special franchise.

" * * * but tangible property situated in, upon, under or above any street, highway, public place or public waters, subject to tax as special franchise as described in subdivision six of section two, shall not be taxable except upon the assessment made as herein provided by the Tax Commission." (Tax Law, § 49.)

In view of the suspension of the right of the local taxing authorities to assess the real property in question during the period that it is assessed as a part of the special franchise, failure on their part to assess such property and enter it upon the tax rolls in a separate part of the roll from the assessment of special franchises was not such an omission as is contemplated by section 24 of the Tax Law.

Careful consideration of the language and purposes of section 24 and section 57, when read together, leads to the conclusion that in any event section 24 does not authorize a new assessment or a

reassessment of property, the assessment of which has been canceled by a court of competent jurisdiction.

The reassessments or new assessments under consideration were made by the common council of the city of Buffalo under authority granted by section 57 of the present Tax Law. The power to reassess or make new assessments upon property, the assessment upon which has been set aside as erroneous or illegal, was a new power unknown to the Tax Law prior to the enactment of section 54, now section 57, by chapter 908 of the Laws of 1896. This new power was originally conferred upon the board of supervisors of a county. Subsequently, and by chapter 629 of the Laws of 1926, the power conferred by the Laws of 1896 upon the board of supervisors was extended to include the common council of a city.

The court, in *People ex rel. Powell* v. *Supervisors* (54 Misc. 323), speaking of the purpose of the enactment, said: " In the examination of the statute the whole statute should be read together, and regard should be had to the purpose which the Legislature intended to effectuate. The purpose of the Legislature was to provide a method by which taxes which had been erroneously or illegally assessed might be legally and effectually reassessed, to the end that all property subject to taxation might bear its just proportion of the public burdens."

The courts having canceled the assessments as void because of the erroneous assumption by the Tax Commission of facts essential to its jurisdiction and declared the tax based thereon illegal, the common council had not only the right but the duty to reassess the property under the power conferred upon it by section 57 of the present Tax Law. That section is not subject to attack as being " curative " in the sense that proceedings thereunder validated prior taxes.

Legislation designed to correct errors in taxation may be divided into two classes. The first class is known as " curative " acts and usually takes the form of an act of the Legislature ratifying and confirming the taxes involved. Those acts, " curative acts," however, can only cure defects in procedure as to steps which the Legislature could have dispensed with in the first instance. (*Cromwell* v. *MacLean, supra.*) They cannot supply jurisdictional defects. The second class relates to " reassessments." It is that class with which we are here concerned. Such a reassessment or new assessment as that provided for by section 57 does not assume or attempt to validate past taxes. It proceeds anew with a new notice and a new hearing to a new assessment based upon the consideration that through a mistake or omission by the taxing

authorities in administering the law the property involved escaped that share of the public burdens for which it was legally liable had the procedure been correct.

Cooley on Taxation ([3d ed.] pp. 526, 527), in treating of the subject of reassessments, says:

" 6. Reassessments. The method of curing defects by reassessment of the tax is less open to abuse than any that has hitherto been mentioned. Whether this be done by general law, which shall provide for all cases in which tax proceedings prove invalid, and authorize the same tax to be imposed on the persons or property that ought to be charged therewith, by proceedings begun *de novo*, or, on the other hand, shall assume the form of a special law providing for the like reassessment in any particular case, it is scarcely possible that it should cause serious injustice beyond what is incident to all tax legislation. In the new proceedings the party concerned will have the opportunity to watch the various steps, and to be heard in review of them, that he has in any case, and he will be precluded by nothing that has taken place in the proceedings which have proved abortive. The reassessment will be for the purpose merely of enforcing against him a duty which he was likely to evade, by reason of the non-feasances or misfeasances of the officers who ought to have enforced it; and as the new proceeding will give him the same opportunity of being heard that is given in other cases, and will be conducted on principles that operate generally, he has no reasonable ground of complaint." (See, also, *People ex rel. Amer. Ex. Nat. Bank* v. *Purdy*, 199 N. Y. 451.)

In *Matter of Niagara County Treasurer* (52 State Dept. Rep. 475) the State Tax Commission, in response to a request for an opinion on assessments made in bulk against a tract of land which had been subdivided, held the assessments void and that the assessments for the years 1929–1932 could be reassessed under section 57 of the Tax Law. That part of the opinion which is pertinent to the matter under discussion reads as follows:

" You will observe from this section that, if it appears to the board of supervisors of a county that ' property liable to taxation *in any year* was erroneously or illegally assessed ' and hence did not become subject to taxation, such property may be placed upon the assessment roll of the current year and taxed as provided in the statute.

" The said lots were illegally assessed in the years in question and hence did not become subject to taxation. I am inclined to the view, therefore, that this section may be invoked by the Niagara county board of supervisors, for the purpose of making reassessment thereunder. Each lot, of course, would have to be separately

assessed and at the valuation ' fixed by the assessors for such preceding year.' " (Emphasis by the Tax Commission.)

Plaintiff urges, however, that even if the authority rests with the common council of the city of Buffalo to reassess, the language of section 57 limits the right of reassessment to the year preceding the property's being placed upon the assessment roll. I am not impressed with such contention. While it may be that the language of the section is in some respects " a confusing mass of verbiage," that confusion disappears when consideration is given to the apparent purpose of the Legislature to confer upon the common council the right to reassess " any property liable to taxation in any year." Limitation upon the right of reassessment clearly appears in sections 24 and 56 of the Tax Law. Under section 24 the right of reassessment is limited to the *preceding* year, while under section 56 the right is limited to the *preceding* and the *current* years. No such limitation appears in section 57, but the right to reassess is conferred in respect to " any property liable to taxation in any year."

The court is of the opinion that the words " for such year," in the phrase " such property did not become subject to taxation for such year," refer to the antecedent " in any year," and that the phrases " for such preceding year," " for the preceding year " and " such preceding year " refer, in each instance, to the year in which the assessed valuation on which taxes shall be based for the ensuing year are fixed, and are not, as claimed by plaintiff, limitations upon the right to reassess for more than the preceding year.

Plaintiff's contention that section 57 is unconstitutional if construed as permitting a reassessment or new assessment for more than the year immediately preceding the year in which the property is placed upon the rolls, does not have this court's approval. The section does not authorize, as claimed by plaintiff, a tax to be imposed rétroactively for the first time, but only a reassessment or new assessment of the property to the end that any property liable to taxation in any year which did not become subject to taxation for such year because erroneously or illegally assessed, could be reassessed and thereby be required to bear its just burden of taxation. Had the property never been assessed for the years under consideration, plaintiff's contention would not be without merit. Such, however, is not this case.

The argument put forth by plaintiff that section 57 does not apply to special franchise assessments may be dismissed with the statement that it is not claimed that that section covers such assessments. The reassessments under consideration are not special franchise assessments.

This leaves for consideration only the question as to whether the common council of the city has the power to reassess property erroneously or illegally assessed during the years prior to the enactment of the statute of 1926, amending section 57 of the Tax Law so as to confer authority upon the common council to make such reassessments. It is claimed that an interpretation of the statute under which such authority in respect of such prior years would be upheld would give a retroactive effect to the statute, and that, in accordance with well-known rules of construction, such an interpretation ought not to be adopted. I am of the opinion that such an interpretation would not be retroactive in a strict sense since it applies only to actions *in futuro* though applicable to conditions existing at the time of the enactment of the law. The proper word to use would perhaps be retrospective. A curative statute would be retroactive, but an enabling act such as the present is not properly so designated. However that may be, and even if we regard the statute as retroactive in effect if so interpreted as to permit reassessment for years prior to its enactment, I am still of the opinion that it should be so interpreted.

The general and familiar rule is that statutes are prospective in their operation unless it appears from their express language or by necessary implication that it was the intention of the Legislature to give them a retroactive effect. There is an equally familiar exception to this rule, namely, that where the statute relates only to matters of remedy or procedure it is to be interpreted retroactively. To this exception there is, however, a limitation that where the statute grants a new remedy where no remedy existed before, no retroactive effect is to be attributed to it in the absence of express words or necessary implication requiring that such interpretation be given.

It is clear that the act of 1926 relates to a remedy and the procedure for employing that remedy. The substantial right concerned is the right of the city to subject the property involved to taxation and the method provided for by the law, namely, of reassessment, is the means by which that right is to be made effectual; that is to say, it is the remedy applicable to the enforcement of the right. In one sense it is a new remedy by reason of the fact that prior to its enactment the common council had no authority to make such a reassessment. It does not, however, create any new right, for the right to subject the property to taxation was already in existence and continued to exist. Neither is it a case of the creation of a new remedy where none existed before, since prior to the enactment of the statute the remedy provided by law for enforcement of the right was an original assessment of the property in the ordinary way.

The cases in which it is held that a statute granting a new remedy where none existed before is not to be interpreted as having a retroactive effect are cases in which the granting of the new remedy is, in substance, the conferring of a new right. In *Jacobson* v. *Colgate* (217 N. Y. 235) the court had under consideration a statute giving to the courts of this State jurisdiction of actions for injuries to real property situated out of the State. The court held that the statute should not be given effect so as to permit the entertainment by our courts of an action for an injury to foreign real estate which had been accomplished prior to the enactment of the statute, upon the theory that no right of action existed in this State for the injury complained of until the enactment of the statute, and that in legal effect there was no wrong which our law would recognize until the enactment of the statute. Similarly, in *City of Buffalo* v. *New York Telephone Co.* (165 Misc. 904), the court refused to give a retroactive interpretation to section 29 of the Workmen's Compensation Law, whereby the payment of an award by the carrier constitutes an assignment of the injured employee's cause of action against a third party upon the theory that prior to the enactment of the statute no right of action existed in the carrier against the third party, that is, that there was no substantive right which could have been enforced prior to the enactment of the statute. In the present case the substantive right of subjecting the property involved to taxation has at all times existed and the act of 1926 does no more than confer a remedy for the enforcement of that right which is additional to the remedy which had previously existed, but which had not been effectively employed.

That the statute should be given retroactive effect follows by reason of the fact that it relates only to remedy and procedure and confers no new right and no new remedy where none had previously existed. (*Laird* v. *Carton*, 196 N. Y. 169; *Hollenbach* v. *Born*, 238 id. 34; *Krull* v. *Bennett Homes & Lumber Co., Inc.*, 258 App. Div. 10; affd., 284 N. Y. 645.)

In addition to the reasons given above, the language of the statute itself is so comprehensive and its purpose, as set forth in *People ex rel. Powell* v. *Supervisors* (54 Misc. 323), so plain that it may fairly be said that that language in connection with that purpose discloses an intention on the part of the Legislature that the statute should be applied to erroneous assessments made prior to the effective date of the act. The statute provides for the reassessment of property liable to taxation which " in any year was erroneously or illegally assessed," and, according to the ordinary and natural sense of these words, years prior to the enactment of the statute as well as those subsequent thereto are included. Like-

wise, the purpose of the act is apparent upon its face, namely, to subject property which had escaped taxation at any time to the payment of its fair proportion of the expenses of the government.

For the reasons herein set forth the reassessments are sustained. Submit findings.