**ANTHONY SCHLEMAN, as Tax Collector of County of Hillsborough, a Political Subdivision of the State of Florida, et al., v. CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a corporation.**

9 So. (2nd) 197                                          En Banc

July 10, 1942

Luther W. Cobbèy, Oliver C. Maxwell, and Lewis H. Tribble, for petitioners.

Gibbons, Vega & Gibbons, and Paul Game, for respondent.

THOMAS, J.:

Petition for certiorari has been filed by the parties who were defendants in the court below to review the

order of the chancellor striking interrogatories and certain parts of the answer. At the outset we will give briefly the contents of the bill of complaint and a resume of the portions of the answer held insufficient. It was alleged in the bill that property of the plaintiff was valued by the assessor for the year of 1941 at approximately $222,000 although the "full cash value" of it on January 1, of that year was but $75,000. It was charged that this value was excessive and unjust and amounted to the practice of a legal fraud upon the pleader. It was further averred that a protest had been made to the board of county commissioners acting as equalizers and that they refused relief. The plaintiff tendered the amount of taxes computed on the valuation of $75,000, and prayed for an injunction against the tax collector to prevent the collection of taxes on the value the assessor had fixed.

In the bill there was contained the express statement that all State and county taxes against the property therefore assessed had been paid.

The feature of the bill which will grow in significance as this opinion develops is that there was no mention whatever made of valuations of other properties of other taxpayers in the county.

The substance of the portion of the answer stricken on motion, or so much of it as is necessary to a determination of the question involved, is: (1) that the property of the plaintiff was assessed on the same basis as other property of like character; and (2) that the plaintiff was the owner of other real estate in the county some of which was not assessed at all and some at less than its full cash value. The discussion of the first of these phases will evolve the primary question involved in this controversy. The chancellor

sustained the plaintiff in his position, that the former clause was inadequate, on the theory that proof of an assessment of his property at three hundred per cent of its full cash value would entitle him to relief without allegations or evidence that there had been any discrimination against him and without any inquiry whether other property in the same category had been valued on the same basis.

To confirm the chancellor it is necessary to hold that a taxpayer may be successful in his quest for relief against an overassessment to the extent alleged solely because of the disparity between the full cash value of the property and the amount of the assessment, despite the contention of appellants that if all property in the county is likewise excessively valued he would not be paying any more than his proportionate share of the tax burden. Parenthetically, it may be observed that no particular innovation was offered by the legislature in Section 2 of Chapter 20722, Laws of Florida, Acts of 1941, where it is provided that the tax assessor must "assess all property at its full cash value" because Section 905, C.G.L., 1927, contained a similar mandate. In our examination of the decisions of this and other courts on the subject there will be, therefore, no need to differentiate between cases decided before the passage of the former and those decided afterwards.

It is. well to bear in mind the provisions of Section 1 of Article IX of the Constitution which places upon the Legislature the duty to provide a "uniform and equal rate of taxation" and to "prescribe such regulations as shall secure a just valuation of all property, both real and personal . . ."

As has been announced by this Court (Rorick, et al., v. Reconstruction Finance Corp., et al., 144 Fla. 539, 198 So. 494), the former provision applies solely to the rate of taxation. The latter deals with valuation and the legislature, in the two Acts already mentioned, adopted the measure of "full cash value" as the guide which the taxing official should follow. It is urged by appellants that the appellee can show no injury by the assessment, even assuming that the valuation is more than the full cash value, if other property similarly situated has been assessed on the same basis. It is true that in ordinary circumstances, where there is no limit on the millage for any particular fund or exemption to be reckoned with, there could be no injury to an individual taxpayer by an equal overassessment of all property on the tax roll because the determinant is the amount to be raised as shown in the budget and so long as that remains static the proceeds of the levy would be the same, hence, if all the property were assessed at three hundred per cent of its value the millage would be thirded. This, of course, would not be the case if there is a ceiling of millage for a stipulated fund. For instance, it is provided in the Constitution (Section 8 of Article XII) that not "more than ten (10) mills on the dollar on all taxable property . . ." shall be assessed for the support of the public free schools. This limitation could be increased to thirty mills by simply tripling the assessed valuation. Another illustration of a limit which might be enlarged by overvaluation will appear from an examination of Section 2826, C.G.L., 1927, providing for a levy of not more than two mills to defray the expenses of criminal prosecutions. As the chancellor has so aptly pointed out the ratio between

contribution and tax burden of the owner of a homestead could not be maintained in circumstances where there had been an overvaluation because the exemption, as in the case of a limitation of taxes for a particular purpose, is fixed therefore if a homestead were assessed at three times its cash value the exemption could not be tripled and the owner of the homestead would pay much more proportionately than in the case of assessment according to the standard prescribed by the Legislature.

Let us suppose a situation where two pieces of property the exact full cash value of $10,000 each are located side by side and are assessed on that basis, with all other property in the county, against which it is necessary to levy thirty mills to meet the budget. If the assessment of each of them is raised to $30,000, or three times the cash value, a levy of only ten mills would be required. Let us assume, on the other hand, that one of the parcels is occupied as a homestead and the other is not so used. The taxable value of the homestead is reduced to $5000, and, therefore, its owner would pay on that property one-half of the taxes for general purposes that would be paid by the owner of the adjoining tract. Then let us multiply the valuation by three so that each property is assessed at $30,000. In these circumstances the owner of the homestead would still be entitled to an exemption of $5000, paying taxes on a remainder of $25,000 or five-sixths as much as his neighbor. The discrimination would result in raising the ratio of taxes paid by the homestead owner from one-half to five sixths, or one-third. By the same token, if all property in the county were uniformly assessed at one-half of its full cash value, homesteads not exceeding $10,000 actual value

would escape taxation for governmental purposes, and the limitations to which we have alluded would be reduced accordingly.

From our study of the briefs and our examination of the authorities we are impressed by the number of courts which have recognized the rule that in the event of overassessment the complaining taxpayer may not find relief in a court of chancery in the absence of discrimination against him. This is the effect of the holding in Sloman-Polk Co. v. City of Detroit, 261 Mich. 589, 274 N.W. 95, 87 A.L.R. 1294; Clark v. Middleton, 74 N.H. 188, 66 Atl. 115; People ex rel. Powell v. Nassau County, 54 Misc. 323, 104 N.Y.S. 353; Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300 S.W. 778; Bunten v. Rock Springs Grazing Asso., 29 Wyo. 461, 215 Pac. 244; and Kinnear v. King County, 124 Wash. 102, 213 Pac. 472. It is noteworthy that in latter cases the Supreme Court of Washington modified the cited decision by holding that the overassessment could be of such moment that the taxpayer might deserve relief without showing a discrimination in the evaluation of land by the tax assessor. Thus, in Inland Empire Land Co. v. Grant County, 138 Wash. 439, 245 Pac. 14, an overvaluation of from two hundred to four hundred per cent of actual value was held to amount to a case of constructive fraud justifying redress regardless of the relative assessed value of the property. The Court of Appeals of Kentucky has adopted this view. Rogers v. Pike County Board of Supervisors, 288 Ky. 742, 157 S.W. (2nd) 346.

It appearing that there are opinions justifying both the position of the appellant and the appellees we are confronted with the problem of determining in what group the trend of our own decisions will more logic-

ally place us bearing in mind, meanwhile, the purpose of the enactment of Chapter 20722, supra. In Graham v. City of West Tampa, 71 Fla. 605, 71 So. 926, Mr. Justice WHITFIELD announced for the Court that "Valuations for taxation must have a just relation to the real value of the property assessed and there must be no substantial inequality in valuations in the various kinds and items of property . . . subject to the tax," and further that "if the steps required to be taken in making valuations are not in fact and in good faith actually taken, and the valuations are shown to be essentially unjust or unequal *abstractly* or relatively,, the assessment is invalid." We have underscored the word "abstractly" because it is important to note that, according to this view, it is not only necessary in making assessments to consider the relative value of a parcel of land but also its value considered independently.

It was decided in West Virginia Hotel Corporation v. W. C. Foster Co., 101 Fla. 1147, 132 So. 842, that "it will be presumed, in the absence of express allegations to the contrary, that the tax assessor complied with the law, and hence did not assess other property at a valuation in excess of its cash value. Therefore, when, as expressly alleged [as here], the assessor arbitrarily assessed the property of complainant in an amount flagrantly in excess of its cash value, the effect is to allege that he committed an unlawful act, and one that apparently worked a discrimination against complainant to the extent of such alleged excess." Applying that rule to the instant case it may well be said that proof of the allegations of the bill of complaint will demonstrate that the assessment of the plaintiff's property at three hundred per cent of its

full cash value was considerably more than an error and that the presumption in favor of the taxing official would, in the event the allegation is substantiated, be overcome.

We have said that the Act, Chapter 20722, supra, so far as it pertains to fixation of values by the assessor offers no innovation. It is patent, however, from a study of its comprehensiveness that by it the Legislature intended to standardize the tax procedure and make it of a uniform application throughout the State of Florida. We cannot be but impressed by this effort and the command to the assessors to use "full cash value" as a yardstick should be obeyed.

We have pointed out some circumstances in which, we think, universal overassessment, though equal, would necessarily work a discrimination, namely, those in which were present fixed amounts of exemption. We have demonstrated, too, how a uniform, excessive, valuation would thwart a statutory or constitutional limitation of millage to be levied for particular purposes.

We are fully aware of the difficulty of fixing with certainty the full cash value of property and the great variance in values set by persons of like experience and judgment, all making estimates conscientiously. Because of this inexactitude considerable leeway should be granted the official whose duty it is to make assessments and because of his position his valuations should not be easily disturbed but in a case like the present one, where the direct charge of overassessment to the extent of nearly three hundred per cent is made, we think an answer such as we have analyzed is insufficient.

We conclude that against all situations and circumstances an assessor should endeavor to comply with the rule pronounced by the legislature and that a taxpayer may, where he alleges gross overassessment and substantiates his allegation with proof, prevail without the additional burden of showing discrimination against him.

The remaining questions may be consolidated and briefly determined. By them the appellants question the right of the appellee to recover without showing that he owns no other property which has escaped taxation; none that is assessed at less than its full value; and none on which legally assesed taxes have not been paid. It is the assertion of the appellants that these questions should be decided in its favor on the equitable principle that one who seeks relief must come into court with clean hands. We agree with the chancellor in his view that the taxes were to be taken distributively and that taxes on any other property which the appellee may have owned were not involved in this controversy which charged overassessment only on the property described in the bill of complaint. It is obvious that the assessment by the official, subject to equalization by the equalization board and to review by the court in a case such as we are considering, is within the control of that officer and that if there has been a failure to tax or an undervaluation it was within his power to remedy the oversight or the defect.

We are of the opinion, too, that the tender by the plaintiff of the amount due on the particular property computed on a proper assessment is all that should be expected or required of him in order to maintain a suit and that he may proceed in his search for relief

as to the land without regard to the status of any separate tract of which he may be the owner.

It is our conviction that the chancellor ruled properly and that the petition for certiorari should be and it is denied.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, CHAPMAN and ADAMS, JJ., concur.