**VAN C. KUSSROW, Acting Tax Assessor of Dade County, Florida; H. EARNEST OVERSTREET, Tax Collector of Dade County, Florida; and J. M. LEE, Comptroller of the State of Florida, v. PITNEY-BOWES POSTAGE METER COMPANY, a Delaware corporation authorized to transact business in the State of Florida.**

18 So. (2nd) 25                                    January Term, 1944
May 9, 1944                                         En Banc
Rehearing Denied June 7, 1944

*Ward & Ward, Melbourne L. Martin* and *Hudson & Cason,* for appellants.

*R. P. Terry,* for appellee.

PER CURIAM:

Affirmed.

It is so ordered.

BUFORD, C. J., TERRELL, CHAPMAN, THOMAS and SEBRING, JJ., concur.

BROWN and ADAMS, JJ., dissent.

ADAMS, J., dissenting:

The Circuit Court of Dade County held invalid a tax levied against certain postage meter machines and fixed a lower valuation thereon for tax purposes. The Court based its decree on the finding:

". . . that the plaintiff's property so assessed had a value as of the time of assessment, based upon manufacturing cost, depreciated upon a basis accepted by all parties to the suit, of $1767.45; that said property in the year 1941 yielded a net income of $989.03; that such property when new has a useful life of five years of which three and one-half years had elapsed in the case of the property in question so that, based upon earnings said property was worth at the time of assessment a maximum of $1483.54; that said property is never sold and therefore has no market value; that it appears that the earnings of said property are produced in part by plaintiff's service organization but the evidence as to this contribution is insufficient to be given weight in this decree; that the true cash value of plaintiff's property should be determined by giving due weight to the depreciated cost thereof and its net earning power, which latter factor is a sum which is earned over a period of a year and a half that from a consideration of said factors the Court does hereby determine that the true cash value of the plaintiff's property as of the time of assessment was the sum of Twelve Hundred ($1200.00) Dollars. . . ."

The appellants' position can best be shown by this part of his answer:

"(A) These defendants admit that the plaintiff returned these eighty-three postage meters for a full depreciated value of $1,767.45, which said figure was assumed to be correct by the Tax Assessor and there is no dispute on that item.

"(B) The Tax Assessor then capitalized the net income for the year 1941 which was taken from the returns filed by the plaintiff, to-wit, the amount of $989.03. This item of $989.03 was the net income from these meters according to the figures of the plaintiff and after the plaintiff had taken full credit for all repairs and servicing costs.

"The defendants would further show that the item of depreciation was considered in the figure arrived at in Subdivision (A) hereof, and that therefore there is no dispute between the plaintiff and the defendants or the Tax Assessor with reference to the depreciated value of $1767.45 or the net income for the year 1941 of $989.03.

(C) Further answering said paragraph, these defendants would show unto the court that these particular machines are patented machines and that they have a value far in excess of the actual physical replacement cost; that the value of the machines which can be used only under the rules and regulations of the United States Post Office Department is made up not only of the cost of physical replacement, but the many years of experimentation, patent rights and the monopoly created thereby in the nature of a franchise right insuring a constant and monopolistic return to the plaintiff and as a conditional element of value the experimentation and ultimate adoption by the Post Office Department under those rules and regulations permitting the use of these machines is an increased item of value. That as an additional increased item of value the Tax Assessor must have considered under his official duties the installation value of these articles in that they were actually in use and doing business and yielding a return and that therefore the only way to place a tangible value upon these pieces of equipment is to consider the intangible worth together with the actual physical value, less the reasonable depreciation. That in

order to capitalize the intangible value of the tangible assessment, the earning capacity or income reduced to a net figure is the most important of all factors entering into an assessment of this type. That based upon this theory, the Tax Assessor capitalized the net income value on the agreed figures on a 6% table which is the percentage basis adopted by the Comptroller of the State of Florida acting as Tax Commissioner on fixing the valuation of intangible personal property which is based only upon its net return and productivity. That at the present time the Tax Commissioner aforesaid has reduced the figure of 6% to 4% thereby increasing the assessed value of said properties when based upon the same income.

"These defendants would therefore show unto the court that the basis of the assessment made by the Tax Assessor in this case is in accord with the usual and general practice used on intangible properties in this state and on other types of rentable but not saleable personal tangible property. That based upon this computation, the amount on the intangible return basis would be $16,484.00 to which there was added the depreciated tangible feature as accepted by the respective parties of $1,767.45.

"The defendants would further show that in order to give full consideration to the plaintiff's claim that these assets suffered a depreciation in total over a five year period of time and also to give credit for the fluctuation claimed by the plaintiff in income and usage, the Tax Assessor then took 50% of the figure arrived at and reached a sum of $9,120.00 as a fair basis for taxation after taking into consideration as aforesaid all of these various elements of value. That the valuation thus arrived at which had taken into consideration the full depreciation and the so-called five year total depreciation of each machine, still did yield to the plaintiff an income of approximately 11% on his investment. These defendants would show unto the court that a yield of 11% and a taxation based upon that yield is not arbitrary or unreasonable in that said return is far in excess of the return earned on intangibles taxed on the same basis in the State of Florida or real estate or other tangible personal property. That from every

criterion of value based upon 100% valuation, the sum of $9,120.00 is a fair and equitable assessment on the value of these machines for taxation purposes.

Further answering said paragraph, the defendants would show unto the court that by the usual and regular interpretation of tax values determined by the market price that any article yielding $989.03 net to the owner would be and could be sold for a value of $9,120.00."

The question is hardly so broad as who has used the correct method of arriving at a lawful value because the tax assessor is charged by law with the duty of fixing the full cash value on the property and is allowed considerable latitude in the discharge of his duty. It is the legal duty of the tax assessor to assess the property at its full cash value. Sec. 193.11, F.S. '41, F.S.A. When the duty is performed it is presumed to be correct and should not be easily disturbed. Schleman v. Connecticut General Life Insurance Company, 151 Fla. 96, 9 So. (2nd) 197. We said in City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115, that when the tax assessor has fixed the value it will stand:

". . . in the absence of a clear and positive showing of fraud or of illegal act of an abuse of discretion rendering an assessment authorized by law so arbitrary or discriminating as to amount to a fraud upon a taxpayer, or to a denial of the equal protection of the law, . . ."

And, too, we said in Tampa v. Colgan, 121 Fla. 218, 163 So. 577:

". . . But where an established market is non-existent the process of valuation must comprehend not only one but all of the influencing factors going to make up intrinsic value. Included in such favors is the idea of the property's 'historical' value, both past and present, as may be determinable by a consideration of its preceding valuations for tax purposes for other years as well as any known current influences that directly operate to appreciate or depreciate the fair market value for the year under consideration."

Consequently the tax assessor was not restricted exclusively to one method of ascertaining value. He was justified in taking into consideration all factors enumerated in his

answer. The method' employed by him was not improper and the value arrived at was not clearly shown to be unreasonable, unjust or arbitrary.

The Connecticut court has held in Somers v. Meriden, 119 Conn. 5, 174 A. 184, 95 A.L.R. 434:

"The value of property may be considered to be that which it has as used and by reason of its use, and it is often a reasonable assumption that it is worth a sum capitalized on the basis of its average income and earning capacity. People ex rel. Panama R. Co. v. Commissioners of Taxes, 104 N. Y. 240, 246, 10 N. E. 440; Pittsburgh, C., C. & St. L. Ry. Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114; Oregon & C. R. Co. v. Jackson County, 38 Ore. 589, 64 Pac. 307, 65 id. 369; Citizens Savings Bank & Trust Co. v. Fitchburg Mutual Fire Ins. Co., 87 Vt. 23, 27, 86 Atl. 1056; In re Taxes, Kapiolani Estate, 21 Hawaii, 667, 671; Pierce Inc. v. Santa Barbara County, 40 Cal. App. 302, 180 Pac. 641."

See also our recent opinion, Hillsborough County v. Knight & Wall Company, 153 Fla. 346, 14 So. (2nd) 703.

I think the decree should be reversed.

BROWN, J., concurs.