426 So.2d 555 (1982)
STATE of Florida, DEPARTMENT OF REVENUE, Appellant,
v.
William MARKHAM, as Broward County Property Appraiser, and Broward County, Appellees.
No. 81-1075.
District Court of Appeal of Florida, Fourth District.
October 22, 1982.
Rehearings Denied February 23, 1983.
*556 Jim Smith, Atty. Gen., and E. Wilson Crump, II, Asst. Atty. Gen. and J. Terrell Williams, Asst. Gen. Counsel, Tallahassee, for appellant.
Gaylord A. Wood, Jr., Fort Lauderdale, for appellee-Markham.
Harry A. Stewart, Gen. Counsel, and Susan F. Delegal and Larry E. Lymas-Johnson, Asst. Gen. Counsel, Fort Lauderdale, for appellee-Broward County.
GLICKSTEIN, Judge.
This is an appeal from one post-judgment order and a review of another. The Department of Revenue appeals the first order, entered by the trial court on June 5, 1981, which held that it was in the best interest of the public to declare the 1980 interim ad valorem tax roll of Broward County the final tax roll. We reverse that order. Broward County has moved for review of that portion of the second order, entered by the trial court on July 15, 1981, which imposed conditions upon the court's vacation of the automatic stay following the Department of Revenue's filing of the present appeal. We grant the motion in part and deny in part.

THE FIRST ORDER
To understand the basic problems involved in this appeal, we must trace the brief history of the action. On April 30, 1980, the Broward County Property Appraiser wisely and helpfully brought an action in the Circuit Court of the Seventeenth Judicial Circuit, invoking the court's inherent equity powers to provide relief. He based his action on Slay v. Department of Revenue, 317 So.2d 744 (Fla. 1975), which involved facts similar to those facing appellant.
In Slay, the Holmes County Property Appraiser brought an action against the Department of Revenue, alleging that the Department had disapproved the county's 1974 real property assessment roll for its failure to meet the constitutional requirement of just valuation.[1]
The circuit court dismissed his complaint on the ground that the exclusive forum to obtain review of the Department's action was the Assessment Administration Review Commission established under section 195.098(1), Florida Statutes (1973). The court also upheld the constitutionality of the Commission. The Property Appraiser then filed a petition for constitutional writ in the supreme court, seeking review of the circuit court order. Both parties recognized *557 Holmes County needed emergency financial relief since no taxes for 1974 had been collected by July of 1975. The Property Appraiser asked the court for authority to collect taxes on some basis, even the disapproved 1974 tax roll, and alleged that he had undertaken a massive reappraisal to be completed in late 1975.
The court found that (1) the county admitted the invalidity of its roll; (2) a financial emergency existed in the county; and (3) the circuit court had jurisdiction to provide relief through its inherent equity powers. Accordingly, Justice England, speaking for the supreme court, directed the circuit court to provide the county equitable relief, including, in the circuit court's discretion, the authority to collect "tentative" 1974 real property taxes based on the existing but invalid tax roll. Justice Sundberg's concurring opinion used the term "interim," rather than the word "tentative" used by the majority, noting the obligation of the county to finalize the reappraisal it had undertaken in order to formulate a valid 1974 tax roll; that is, one based on the constitutional requirement of just valuation.
In the present case, the complaint which was filed alleged that on December 28, 1979, the Executive Director of the Department of Revenue issued a directive to the Property Appraiser to the effect that the 1979 real property tax assessment roll was at less than just valuation and that the 1980 roll must be at 100% of just value before it would be approved. It further alleged that in order to comply with that directive, a complete reappraisal was necessary; that the 1980 assessment roll based on that reappraisal could not be completed until April of 1981; that the governing bodies within the county had to receive 1980 tax revenues by November of 1980 or their essential governmental functions would be impaired; and that if the Property Appraiser were allowed to deliver to the County Revenue Collection Division an assessment roll for 1980 based on 1979 values and 1979 millages, he could do so by November 1, 1980. The complaint asked the court to extend the time for preparation of the 1980 real property assessment roll until April 1, 1981; that the Property Appraiser be ordered to prepare an "interim" tax roll for 1980 based on 1979 values and millages upon which tax notices could be sent; that when the 1980 roll finally had been prepared, normal administrative hearings be held, millages set and supplemental tax notices sent; and that the court supervise the interim and final 1980 rolls.
The Department of Revenue had no objection to the Property Appraiser's plan nor to extending the time for finalizing the 1980 roll based on just valuation. The Board of County Commissioners of Broward County then intervened, although Broward County, pursuant to article VIII, section 8.07 of its Charter, has taken the place of the original intervenor in this appeal.
On July 22, 1980, the court entered final judgment, making three findings of fact.
First, the Property Appraiser was making diligent efforts to comply with the Department's directive to appraise all real and personal property in Broward County at "just value,"[2] but the rolls could not be completed prior to early 1981.
Second, essential governmental functions would be impaired unless the governmental bodies in the county commenced receipt of *558 1980 tax revenues in November of 1980. In order to effectuate this goal, the court had to devise a procedure which would allow taxpayers to pay taxes on an interim basis, with final adjustments being made when the 1980 rolls received approval by the Department of Revenue. Slay presented the same problem with the court sanctioning the same result. It also represented the latest word from the supreme court,[3] which leads us directly to the last finding.
Third, the court took judicial notice that the Legislature enacted the TRIM (Truth in Millage) bill after appellant filed his suit,[4] *559 and stated that "to the maximum extent possible" it would incorporate the provisions of the statutes in its judgment. The crucial part of the bill, for our purposes, was codified as section 193.1145, Florida Statutes (Supp. 1980).[5] It provided what Justices England's and Sundberg's creative opinions in Slay had first devised; namely, a tentative or interim tax roll. Accordingly, paragraph one of the judgment directed the Property Appraiser:
to prepare an interim roll for the year 1980, based on the 1979 roll, adjusted to the extent practicable to reflect additions, deletions and changes of ownership, classifications and exemptions since the publication of the 1979 roll. Said roll shall include new construction which would otherwise be placed on the final 1980 roll. If there are any "splits" or "cut-outs," that is, properties appearing on the 1979 roll which are not also on the 1980 roll, Plaintiff shall use 1980 values for the purpose of the 1980 interim roll. Values for tangible personal property for 1980, which have been computed by Plaintiff, shall be included in the interim roll at their 1980 values.
Paragraph nine directed the County Revenue Collection Division to
mail to each taxpayer the notices required by law and proceed to collect taxes upon the interim roll as required by Section 193.1145 and Chapter 197, F.S., as amended. Discounts shall be allowed as provided by law, and delinquencies collected as may reasonably be accomplished. However, it shall not be necessary to advertise delinquent taxes on the interim 1980 rolls. The Revenue Collection Division shall continue to collect installment payments being made by taxpayers based on 1979 taxes, and shall make the final adjustment called for by law at the same time the final assessment rolls are approved and certified for collection.
Paragraph thirteen provided:
The entry of this Order shall not be deemed in any way to interfere with the preparation of the 1980 assessment rolls, nor the administrative procedures for the proper review thereof. Plaintiff MARKHAM is hereby granted until February 1, 1981, to submit the 1980 assessment rolls to the Executive Director of the Department of Revenue for review. Nothing contained in this Order shall limit the statutory authority of the Executive Director of the Department of Revenue to *560 disapprove all or any part of the assessment rolls submitted by the Plaintiff MARKHAM, not complying with law.
Had the judgment stopped there, it would have been, in our opinion, just what the doctor ordered. Instead, it went on to provide in paragraph ten:
At such time as the Revenue Collection Division receives a proper certified Final Roll for 1980, and the Property Appraiser has calculated taxes as provided in Section 193.1145(8)(a), F.S. 1980, the Property Appraiser shall present to this Court the information concerning the amounts to be supplementally billed and refunded, and the Revenue Collection Division shall provide this Court with information concerning the costs of making such further adjustments, collections and refunds. At that time, this Court will determine, pursuant to Section 193.1145(8)(d), F.S., whether the interests of justice require subsequent billing, and if not, whether the interim assessments shall be the final 1980 assessments.
As paragraph ten reflects, section 193.1145(8)(d), Florida Statutes (Supp. 1980),[6] formed the statutory basis for the court's course of action. We believe the trial court would not have included paragraph ten had it been presented with the argument made on appeal by the Department of Revenue; namely, that a basic principle of statutory construction is that the court has a duty, if reasonably possible, to construe a statute so as not to conflict with the Florida Constitution. State v. Gale Distributors, Inc., 349 So.2d 150 (Fla. 1977). We intend to follow that principle. In doing so, we construe section 193.1145(8)(d) to mean that reconciliation between the interim and final rolls or preparation of a final roll can be eliminated only if the interim roll is based on just valuation. Were we to construe the section as permitting judicial approval of an interim roll not based on just valuation, such construction would fly in the face of article VII, section 4. In short, the Legislature cannot enact a statute which does away with just valuation as the basis for ad valorem taxation nor can it enact a statute which empowers the court to do away with this constitutional requirement.
The First District Court of Appeal concurs with our conclusion. In Department of Revenue v. Adkinson, 409 So.2d 53 (Fla. 1st DCA 1982), it reversed the circuit court's order which had confirmed the 1980 Walton County interim roll as the final roll. After the Department of Revenue disapproved his 1980 roll, the Walton County Property Appraiser filed an action, just as the Broward County Property Appraiser did in this case, asking the court to extend the time in which he could prepare a corrected roll based on just value. He further asked that the disapproved roll be permitted to act as the interim roll. On November 26, 1980, the circuit court did exactly what the Property Appraiser asked. In June of 1981, however, although the Walton County valuations on the interim roll were admittedly at seventy-seven percent of just value, the Property Appraiser asked the circuit court to confirm the disapproved interim roll as final, which the court did, relying upon the *561 authority granted by section 193.1145(8)(d). In reversing, our sister court said:
The language which is the subject of the instant dispute appears in a subsection which deals with remedies a court may order where the amount to be supplementally billed and refunded is "insufficient to warrant a separate billing or that the length of time until the next regular issuance of ad valorem tax bills is similarly insufficient." The subsection provides that a court may under such circumstances authorize the tax collector to withhold issuance of supplemental bills and refunds until issuance of the next year's tax bills. As an alternative, it provides that, at the option of the tax collector, separate bills and statements of refund may be issued. Then, and without further explanation, the disputed language appears. It is clearly tied to the previous sentences grammatically by the phrase "in addition." Accordingly, before the court may enter an order confirming taxes levied against the interim assessments to be final for the year in question, it must find that the amount to be supplementally billed and refunded is so insufficient that it would not be in the best interest of the taxpaying public to require preparation of a final roll, or to order reconciliation between the final and interim rolls, that is, the preparation or reconciliation would amount to a mere formality.
Id. at 56.
We know that the Property Appraiser filed the present action for the purpose of obtaining the court's approval of (1) an extension of time in which he could complete the mass appraisal necessary to achieve a tax roll for 1980 that the Department of Revenue would approve as being based on just valuation and (2) the use of the 1979 tax roll, subject to some adjustments, as the 1980 interim roll on which the governmental bodies could collect tax revenues essential to their existence. By including paragraph ten in the final judgment, the parties opened the door to the elimination of reconciling the interim roll with the final roll. The parties failed to recognize the logical premise that reconciliation could not constitutionally be eliminated if the interim roll was not based on just valuation.
On March 23, 1981, the Executive Director of the Department of Revenue approved the final 1980 roll which the Property Appraiser had submitted the previous month. Four days later the Property Appraiser, not recognizing what we now perceive to be the constitutional problem, filed a Motion to Determine Tax Roll Procedures, which said:
WILLIAM MARKHAM, as Broward County Property Appraiser, pursuant to Section 193.1145(8)(d), Florida Statutes, prays that this Honorable Court hold a hearing on short notice to determine whether the implementation and administration of a reconciliation between the interim and final rolls is or is not in the best interests of the public, and to enter an order either confirming the taxes levied against the interim rolls to be final for the year 1980, or to determine whether supplemental bills and refunds should be sent or amounts due should in that event be credited against 1981 taxes due.
In response to the Property Appraiser's motion, the Department apparently failed to call to the court's attention the constitutional problem.[7] As a result, after conducting a four-hour hearing on the Property Appraiser's motion, the court did the same thing the circuit court in Walton County did at about the same time; namely, it impermissibly dispensed with reconciliation of the rolls and ordered the interim roll final. In doing so, it made several findings, some of which would have been relevant had the *562 interim roll satisfied the constitutional requirement.[8] But the roll did not, and because the constitutional infirmity in the interim roll vitiates the order, the same is hereby reversed.[9] On remand the trial court is directed to order the reconciliation of the subject rolls and to exercise jurisdiction for the entry of such additional orders which reconciliation requires.

THE SECOND ORDER
On June 23, 1981, Broward County filed a motion to vacate the stay which occurred automatically pursuant to Florida Rule of Appellate Procedure 9.310(b)(2)[10] upon the *563 Department of Revenue's filing of the present appeal. On July 15, 1981, the trial court, after conducting a hearing on the motion, entered an order which made the following findings:
1. That the County and cities are awaiting revenues to be generated by the sale of tax certificates pursuant to Chapter 197, F.S.;
2. That it is necessary that taxing jurisdictions within the County establish millage rates in a manner conforming with Florida Statutes for the year 1981-82 based upon certification of value prepared by the Property Appraiser;
3. That it is necessary that the County and other taxing jurisdictions be in a position to complete the collection of their revenues under the 1980 tax roll as approved by this Court and to initiate, in a timely fashion, collections under the 1981 roll.
Based on these findings, the trial court vacated the stay upon the following conditions:
a. That the Property Appraiser submit his assessment roll for 1981 to the executive director of the Department of Revenue prior to August 1, 1981; and
b. That the County not receive interest on delinquent taxes as provided by § 193.1145(10)(a), nor shall the County receive any penalties or costs as required pursuant to § 197.062(3), upon any taxes which were paid prior to thirty (30) days from the Order dated June 5, 1981, as long as the following requirements are met. In order to effectuate this condition, any person who shall request of the Division of Revenue Collection a return of the interest, penalty and costs upon said taxes shall be entitled to same within a reasonable time thereafter upon the presentation of a receipt showing the payment of said interest, penalty and costs. Any amounts not so claimed within thirty (30) days of the date of this Order shall not be required to be returned provided further that Broward County adequately publish notice to all persons who may be entitled to such a return in order that they may be further informed of their rights under this order.
The Department of Revenue filed an emergency motion seeking review of that portion of the order vacating the automatic stay, which we denied by earlier order. Broward County seeks review of the conditions set forth in paragraph b of the order, asserting three errors. First, it argues the trial court lacked jurisdiction to impose conditions which amended the final judgment once the notice of appeal had been filed. The order of June 5, 1981, of course, was not a final judgment, but rather a post-judgment order entered pursuant to paragraph ten of the final judgment rendered on July 22, 1980. The subject matter of that post-judgment order, and the appeal therefrom, raised the single issue whether the trial court erred in confirming the interim roll as the final roll pursuant to section 193.1145(8)(d). As best as we can determine, neither the Property Appraiser's Motion to Determine Tax Roll Procedures, the hearing thereon, the memoranda submitted after the hearing nor the order on the motion ever addressed the subject matter of the conditions imposed in paragraph b. Paragraph b raised the following issues:
1. When was the delinquent provisional taxpayer first liable for interest on provisional taxes imposed by section 193.1145(10)(a), Florida Statutes (Supp. 1980)?
2. When was the delinquent provisional taxpayer subject to the provisions of chapter 197, Florida Statutes, as amended in 1980?
These issues, although occasioned by the finalizing of the assessment roll after March 31, were separate and apart from the single issue raised in the appeal from the order of June 5, 1981. A resolution of them neither impaired nor otherwise affected a resolution of the earlier appeal. In fact, they came within the ambit of paragraph fourteen of the final judgment, which provided:

*564 This Court reserves jurisdiction of this cause for the entry of such other and further orders as may be necessary from time to time.
The resolution of the two issues in paragraph b was appropriate for a post-judgment order separate from that of June 5, 1981. Accordingly, the present appeal did not divest the trial court of jurisdiction to consider these issues.
Second, Broward County argues Florida Rule of Appellate Procedure 9.310(b)(2) does not authorize the trial court to impose conditions on the party seeking the vacation. We feel it is unnecessary to involve ourselves in construction of the rule and elect to respond to the heart of the County's motion; namely, its third argument, which is that the trial court incorrectly decided the merits of the two issues.
Paragraph b refers to two statutes. The first, section 193.1145(10)(a), Florida Statutes (Supp. 1980), provides:
Delinquent provisional taxes on real property shall not be subject to the delinquent tax provisions of chapter 197 until such time as the assessment roll is reconciled, supplemental bills are issued, and taxes on the property remain delinquent. However, delinquent provisional taxes on real property shall accrue interest at an annual rate of 12 percent, computed in accordance with s. 197.0161. Interest accrued on provisional taxes shall be added to the taxes, interest, costs, and charges due with respect to final taxes levied. When interest begins to accrue on delinquent provisional taxes, the property owner shall be given notice by first-class mail.[11]
The second, section 197.062(3), Florida Statutes (Supp. 1980), says:
The tax collector shall advertise once each week for 4 weeks and shall sell tax certificates, except as provided in s. 197.116(2), on all real property with taxes due on or before June 1 of each year. He shall make a list of such properties specifying the amount due on each parcel, including interest at the rate of 18 percent per year from April 1 to the date of sale, except that the minimum charge for any taxes redeemed prior to the sale of a tax certificate shall be 3 percent regardless of the time of redemption, with the cost of advertising and expense of sale in the same order in which the lands were assessed.
Taking one issue at a time, the first asks whether the trial court erred in denying the County interest on delinquent provisional taxes from April 1, 1981. We have no doubt in our minds the County was entitled to the interest. Had the roll been finalized prior to April 1, a delinquent taxpayer would have paid substantially more interest from and after that date pursuant to section 197.062(3).[12] The Legislature provided the delinquent taxpayer of provisional taxes with a reduced rate of interest and immediate notice of delinquent provisional taxes.[13] No statutory authority for *565 dispensing with interest exists, assuming notice has been given. The trial court, though motivated by the equitable consideration that the delays in finalizing the assessment roll should not work to the detriment of the taxpayer, was bound by the statute.[14] Accordingly, we grant the motion for review and quash that part of the order which dispenses with interest on delinquent provisional taxes.
Turning to the second issue, the first sentence of section 193.1145(10)(a), quoted earlier, governs our decision upon the question as to when the lower interest provided by that section ends and section 197.062(3) takes over. The condition imposed by the trial court which is involved in the second issue was not appropriate if the court was going to do away with reconciliation. In such instance, sections 193.1145(8)(d) and 197.0125, Florida Statutes (Supp. 1980),[15] would have applied, not section 193.1145(10)(a). The critical date would have been June 5, 1981, the date on which reconciliation was eliminated, not thirty days thereafter as the trial court ordered. The June 5th date would have triggered immediately the provisions of chapter 197. But, because the trial court should have ordered reconciliation and failed to do so, the delinquent taxpayers should not lose that "grace" period which section 193.1145(10)(a) provides. This period, which terminates on the implementation of the reconciliation order, reasonably could have been thirty days because the supplemental bills could have been sent during this time. Accordingly, we affirm the portion of the order which delayed application of chapter 197 for thirty days after June 5, notwithstanding the erroneous reason given by the trial court for doing so, and deny the motion for review as it relates thereto.
DOWNEY and HERSEY, JJ., concur.

ON MOTIONS FOR REHEARING AND MOTION FOR CLARIFICATION
GLICKSTEIN, Judge.
In our original opinion, to which we adhere, we were concerned with two post-judgment orders of the trial court. The Broward County Property Appraiser and Broward County seek rehearing with respect to the primary order of the trial court. That order eliminated reconciliation of two rolls: (a) the 1980 interim roll as approved in the final judgment, and (b) the 1980 roll subsequently approved by the Executive Director of the Department of Revenue.

*566 I
Subsequent to our decision,[1] two others were rendered. The most recent of these is Adkinson v. Department of Revenue, 422 So.2d 842 (Fla. 1982) (order denying petitions for review on jurisdictional grounds). There, the supreme court decided it would not review Department of Revenue v. Adkinson, 409 So.2d 53 (Fla. 1st DCA 1982), which was cited with approval in our opinion.
The second decision is Department of Revenue v. Johnston, 422 So.2d 935 (Fla. 5th DCA 1982), petition for review filed, No. 63,013 (Fla. Dec. 27, 1982). That decision does not mention our opinion in this case because of the proximity in dates of issuance; and we respectfully disagree with its following analysis of section 193.1145(8)(d):
But in drafting section 193.1145, the Legislature recognized the reality that many counties would take some time and special help in getting up to one hundred percent assessment, and it made provisions for that. It also created an escape window, or special waiver exception for counties who in good faith sought but failed to achieve the required one hundred percent assessment, and for whom that step would cause too great a local government disruption and crisis. The statutory technique of taxing on the interim tax basis, or allowing a one year reprieve, was borrowed (we think) from Florida Supreme Court cases, which first created those remedies based on common law and equitable consideration. We choose to read "not in the best interest of the public" in the context of those cases.
Id. at 938 (footnotes omitted). Again, we say that the legislature cannot forgive what the constitution ordains; therefore, such construction given the statute by the Fifth District Court of Appeal  taken to its logical conclusion  would compel a finding that the statute is unconstitutional. Nevertheless, there is much in that opinion to consider, but not with the foregoing statute as the foundation for the ultimate result reached by the court. Instead, if indeed governmental fiscal crisis were to occur in Flagler County should the reconciliation between the rolls be compelled, the trial court's inherent power to head off such crisis would have served as the basis for doing so. So it was in State ex rel. Butscher v. Dickinson, 196 So.2d 105 (Fla. 1966), decided in November, 1966  precisely when the governmental bodies in Bay, Hillsborough, Lee and Marion counties were expecting their revenue from their 1966 tax rolls  that the supreme court had no choice but to permit them to collect taxes although the rolls were below just value. The court first noted that the trial court had found that none of the tax assessors, in the time remaining, could compile a tax roll for 1966 which would meet the requirements of law. Therefore, it held:
Without in anywise condoning the failure of performance by the respondent tax assessors we hold the demands of county government and education must be met this year, albeit imperfectly, and the presumptively valid decrees retaining jurisdiction and ordering the compilation of adequate rolls for 1967, presents the more acceptable disposition of the problem.
Id. at 107.
It is not for us to say whether fiscal crisis would occur in Flagler County in the event of reconciliation. However, there is no evidence in the record of this case to support the conclusion that reconciliation would trigger such crisis in Broward County. First, we note that even the Fifth District Court of Appeal was not impressed with the cost of reconciliation as a basis for eliminating such requirement;[2] it cited to the decision of this court in Coe v. Broward County, *567 358 So.2d 214, 217 (Fla. 4th DCA 1978), which held:
A taxing authority must demonstrate more than the mere expense of processing refunds in order to deny the taxpayers their right to a refund of the illegally assessed taxes.
Second, as to the "disruptions" which the trial court in this case concluded to be the basis for its order, we observe the following:
A. As to the finding that reconciliation would postpone the sale of tax certificates for five months, postponing collection of 5% of revenues budgeted for the 1980-1981 fiscal year, and causing curtailment of services, we consider that to be a concern but not a crisis. The diminution of 5% in the gross income of a county should not affect the basic stability of that government.
B. As to the finding that the cost of reconciliation during the current budget year would require curtailment of county services, including "the Sheriff, Human Services and the Courts" because the county's contingency fund for the fiscal year was down to approximately $50,000 from $1,200,000, we find that to be a self-imposed disruption not required by the legislature in the implementation of section 193.1145. A close reading of section 193.1145(1) not only establishes the legislature's recognition of the constitutional requirement of just valuation and the necessity of meeting that requirement, but also its recognition that the reconciliation could be effected in the next fiscal year. It provides in part:
193.1145 Interim assessment rolls. 
(1) It is the intent of the Legislature that no undue restraint shall be placed on the ability of local government to finance its activities in a timely and orderly fashion, and, further, that just and uniform valuations for all parcels shall not be frustrated if the attainment of such valuations necessitates delaying a final determination of assessments beyond the normal 12-month period.

(Emphasis supplied.)
C. As to the finding that the limitations of the county's computer operation and personnel would require utilization of another interim roll for 1981, we consider that again to be a self-imposed disruption not required by the statute. We believe the statute requires a construction which results in implementation in a reasonable manner. The statute is remedial in nature and designed to assist the governmental units in attaining the constitutional goal. Rather than creating crisis, it eliminated it by providing for interim funding. Throughout the statute there is the implication that delays in the process, while not inevitable, surely were foreseeable. For example, disputes between property appraisers and the executive director were contemplated by the TRIM bill, as were the administrative and judicial remedies available to both.
We are very concerned about the manner in which the property appraiser's post-judgment motion was pled and considered. The motion, having been expressly based upon section 193.1145(8)(d), should have been given short shrift because of the constitutional problem of just valuation discussed fully in Part II hereinbelow. However, the trial court proceeded as it did upon the motion because of the initial lack of input by the Department of Revenue upon the constitutional point prior to and at the hearing on the motion. As a result, the entire situation imposed upon the trial court an unfocused picture of self-imposed emergency, notwithstanding the orderly implementation contemplated by section 193.1145(1).[3]
Unlike the Flagler County case, which was a separate law suit assumably pled and tried in a conventional manner, the post-judgment motion in the present case, as quoted in our original opinion, was one paragraph long and failed to include allegations of fact, indicate what direction the *568 property appraiser was taking, or a prayer for specific relief. In Flagler County, the property appraiser, having sued to dispense with reconciliation, assumably alleged ultimate facts in her complaint and made plain what relief she was seeking. In the present case, there was no responsive pleading filed by the Department of Revenue or Broward County which created viable issues for the trial court to consider. While we have no way of knowing if there was discovery in Flagler County, there was none here. Additionally, at the four-hour hearing on the motion, the witnesses were not completely prepared, as evidenced by the testimony of an expert that he had been requested to prepare some data the day before the hearing and by the necessity for the trial court to consider post-hearing, unilateral affidavits. Our final observations of the trial court's order are that its remaining concerns, while genuine, would not support the exercise of its inherent authority to dispense with reconciliation;[4] and that it expressly relied on section 193.1145.

II
The motions of the Broward County Property Appraiser and Broward County were filed prior to the decision of the Fifth District Court of Appeal and seek rehearing on the ground that there is no evidence in this case that the 1980 interim roll was not based on just valuation. In fact, they argue that the only evidence in the record is that the interim roll was based on just valuation. The record does not support their contentions.
On June 28, 1979, the Executive Director of the Department of Revenue issued a directive to the Broward County Property Appraiser that the 1979 real property assessment roll was not based on just valuation; and that the 1980 roll must have such basis. The property appraiser did not dispute the directive by taking any action. Instead, after a period of four months, he filed the complaint in the present action and informed the trial court that he needed the court's order as authority for the additional time he required to comply with the directive. He alleged that he had requested of and had obtained from the executive director an extension until December 1, 1980, which was the limit of the latter's authority. He further alleged that it would take him until April 1, 1981, to complete the reassessed roll required by the directive; and he prayed for that relief.
The final judgment, which gave the property appraiser until February 1, 1981, to complete the roll, was not entered until July 22, 1980. By then, the legislature had added section 195.092(2), Florida Statutes (Supp. 1980), which expressly authorized an action by the property appraiser against the executive director to contest any directive involving the 1980 roll. The property appraiser took no such action. Instead, he undertook to comply with the directive of December 28, 1979. By February 6, 1981, he had completed the reappraisal necessary to comply with the directive; and the trial judge to whom the action was reassigned after final judgment extended until February 9, 1981, the date on which to submit the roll to the executive director. On March 23, 1981, the executive director approved the work product of the property appraiser for the 1980 roll. At that point, the property appraiser said nothing to the trial court, in this or any other proceeding which has been called to our attention, to indicate that the 1979 values  basically used for the interim 1980 roll approved by the final judgment  were based on just valuation. Having expended months in compliance with the directive, he could hardly now contend that the expense involved in the reassessment work by his office had been unnecessary.
As we have pointed out in our opinion, and hereinabove, the property appraiser's one-paragraph motion asked the trial court to determine whether the interim 1980 roll, primarily based on 1979 values, had to be reconciled with the approved 1980 roll, *569 which was based on reassessed values. None of the parties focused upon the constitutional problem at the hearing on the motion, as the Department of Revenue first raised it in its post-hearing memorandum. The only consideration of just valuation at the hearing was happenstance, totally peripheral and would never justify an affirmance in this case.[5]
To reiterate, the main thrust of the motions for rehearing is that there is no evidence in the record that the 1979 roll, which was used as the interim roll (and confirmed by the trial court as the 1980 tax roll), was not based upon just valuation. We reject that contention for three reasons reflected in the record. First, the 1979 roll of seventeen billion dollars was determined by the Department of Revenue not to be based upon just valuation, whereas the new 1980 reassessment roll of twenty-two billion dollars prepared by the property appraiser was approved as based on just valuation by the Department. If the 1980 roll was at just valuation, the 1979 roll could not be. Second, although the Department of Revenue notified the property appraiser that it would not approve the 1979 tax roll as just valuation for 1980, no administrative appeal or any other action was taken by the appraiser to overturn the decision. Third, the property appraiser entered upon a reassessment of the county property to bring the roll to just valuation (which resulted in the increase of five billion dollars  almost one-third of the 1979 valuation). In Slay v. Department of Revenue, 317 So.2d 744 (Fla. 1975), the supreme court said:
As we view this cause, Holmes County has admitted the invalidity of its 1974 tax roll. By failing to pursue an administrative appeal to the Commission, the County left intact the department's disapproval. By contracting for a massive reappraisal of properties, the County acknowledged the invalidity of assessments forming the basis of its proposed 1974 roll. (Footnote omitted.)
Id. at 746.
Suffice it to say, we conclude therefrom that the record is clear that the 1979 tax roll was substantially below just valuation.[6]
The property appraiser's remaining arguments warrant the briefest of consideration. We sua sponte strike therefrom the newspaper article attached to his motion for rehearing and any reference to it. He raises matters for the first time in his motion for rehearing, contrary to accepted practice, Sarmiento v. State, 371 So.2d 1047 (Fla. 3d DCA 1979), approved, 397 So.2d 643 (Fla. 1981), and alludes to specters involving title insurers, without evidentiary foundation.
With respect to the Department of Revenue's motion for clarification, the analysis contained in footnote nine of our opinion did not pertain to issues involving just valuation. Specifically, article VII, section 4, Florida Constitution, to which article VII, *570 section 6(d) refers, involves only just valuation. Because neither article was involved in our analysis, the Department's concern should be dissipated.
Accordingly, we deny all motions and conclude that this matter be returned to the trial court for reconciliation in compliance with section 193.1145, Florida Statutes (Supp. 1980).
DOWNEY and HERSEY, JJ., concur.
NOTES
[1] Article VII, section 4, Florida Constitution (1968), provides:

By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation... .
[2] The term "just value" used by the court was a shortened combination of the term "full cash value" as used by the Legislature and courts and the term "just valuation" as it has appeared in the Florida Constitution since 1868. Article IX, section 1, Florida Constitution (1868), provided:

The Legislature shall provide for a uniform and equal rate of taxation ..., and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal... .
Article IX, section 1, Florida Constitution (1885), added additional provisions but contained the exact words of the earlier Constitution.
The Legislature first equated just valuation with "full cash value" in Chapter 1, 713, § 17, Laws of Florida (1869), but it was not until the Florida Constitution was amended in 1934 to provide a $5,000 exemption from taxes for homestead property that the Supreme Court of Florida judicially established the principle that has been followed ever since; namely, that just valuation or just value is legally synonymous with full cash value. Schleman v. Connecticut Gen. Life Ins. Co., 151 Fla. 96, 9 So.2d 197 (1942); Walter v. Schuler, 176 So.2d 81 (Fla. 1965).
The tie between just valuation and full cash value is the homestead exemption. If assessment is less than at 100% full cash value, the owner of homestead property has an unfair advantage over the owner of non-homestead property. The 1980 amendment to article VII, section 6(d) of the Florida Constitution specifically provides:
By general law and subject to conditions specified therein, the exemption shall be increased to a total of the following amounts of assessed value of real estate for each levy other than those of school districts: fifteen thousand dollars with respect to 1980 assessments; twenty thousand dollars with respect to 1981 assessments; twenty-five thousand dollars with respect to assessments for 1982 and each year thereafter. However, such increase shall not apply with respect to any assessment roll until such roll is first determined to be in compliance with the provisions of section 4 by a state agency designated by general law. This subsection shall stand repealed on the effective date of any amendment to section 4 which provides for the assessment of homestead property at a specified percentage of its just value.
(emphasis supplied.)
As we have said earlier, section 4, to which section 6(d) refers, compels the Legislature to prescribe regulations to secure a just valuation. The reason for the last sentence of section 6(d) can be illustrated best by an example. Let us assume that in 1983 section 4 is amended to read:
By general law regulations shall be prescribed which shall base ad valorem taxation of property on fifty (50%) percent of its just value.
In the absence of repeal of section 6(d), owner A of homestead property worth $100,000 would pay tax on a value of $25,000, i.e., $50,000 (50% of $100,000) less the $25,000 homestead provision provided by section 6(d). Owner B of non-homestead property worth $100,000 would be taxed on a basis of $50,000 (50% of $100,000). The value of A's property being taxed is 50% of the value of B's property being taxed  ($25,000 divided by $50,000). If, however, A is assessed at 100% of just value or just valuation or full cash value, he would pay tax on $75,000 ($100,000 less $25,000) and B would pay tax on $100,000. In such instance the value of A's property being taxed is 75% of the value of B's property being taxed ($75,000 divided by $100,000). As can be seen from the two examples, when the assessment is reduced below 100%, A pays tax on a lesser percentage of the value on which B pays tax, which is unfair to B. To avoid this unjust valuation, the assessment must be based on 100% of full cash value.
[3] We think it extremely important that Slay was decided almost ten years after Butscher v. Dickinson, 196 So.2d 105 (Fla. 1966). Both cases presented the same situation; that is, assessment rolls admittedly based on less than just valuation. In Dickinson, governmental chaos seemed inevitable if taxes could not be collected on the invalid roll. By the time of the decision, which involved the 1966 rolls, it was November of 1966. The court refused to direct the comptroller not to accept the rolls but said it would open its door, if necessary, to see that the 1967 rolls passed constitutional muster. Dickinson simply did not consider the concept of an interim roll for 1966 as did Slay in 1975.
[4] Ch. 80-274, 1980 Fla.Laws 1143, as amended by ch. 80-261, 1980 Fla.Laws 1077. For an excellent treatment of the TRIM bill, see Pajcic, Weber, and Francis, Truth or Consequences: Florida Opts for Truth in Millage in Response to the Proposition 13 Syndrome, 8 Fla.St.U.L. Rev. 593 (1980). Unfortunately, the length of the article prevents its republication in this opinion. Briefly stated, the article gives the history of achieving fair market value assessments for ad valorem taxation in Florida and an in-depth analysis of the gargantuan tax reform law resulting from the joint creativity and elbow grease of the Governor and the Legislature. The authors point out the bill is the means by which to achieve fair market value assessments. It enables fair market value assessments, according to the authors, by treating:

A. Truth in Millage
B. Property Tax Containment
C. Assessment Review
D. Enhanced State Review of Assessment Rolls
E. Interim Rolls; Averting Fiscal Chaos in the Roll Disapproving Process
F. Revised Procedures for Assessment Roll Litigation
G. Equalization of Education Funding
[5] Section 193.1145, Florida Statutes (Supp. 1980), is too long to be reprinted in its entirety. Portions of the legislation will be reprinted in this opinion when they are dispositive of an issue. The subsections relevant to this opinion are discussed by Pajcic, Weber, and Francis, supra note 4, at 623-24:

E. Interim Rolls: Averting Fiscal Chaos in the Roll Disapproval Process
As of this year, a property appraiser amenable to correcting defects in his assessment roll can properly do so without fear of delaying the local budgetary processes. A major reform measure in the TRIM bill is the provision for an interim tax roll. Under the provisions of this law, a local taxing authority can bring a civil action in the circuit court to obtain an order for implementation of an interim assessment roll if the property appraiser has not timely submitted his roll to the Department of Revenue, or if all or part of the submitted roll is disapproved by the Department. If the circuit court concludes that "a delay in the final determination of assessments will substantially impair the ability of the authority to finance its activities," it may order the use of the last approved roll if the current roll is delayed, or the use of the current roll although it has been submitted and disapproved. In those cases where the property appraiser and the county governing body agree to utilize an interim roll, no judicial action is required.
Taxes levied against the interim roll are provisional and subject to reconciliation once the final roll is approved. The reconciliation contemplates an adjustment of millage rates so that the aggregate taxes collected by the taxing authorities remain unchanged, although liabilities of individual taxpayers may change as a result of the recomputation. Taxpayers who were relatively underassessed on the interim tax roll will receive supplemental bills; those who were relatively overassessed will receive refunds. Reconciliation can be waived by the circuit court if it is determined not to be in the best interest of the public.
[6] Section 193.1145(8)(d), Florida Statutes (Supp. 1980), provides:

However, the court, upon a determination that the amount to be supplementally billed and refunded is insufficient to warrant a separate billing or that the length of time until the next regular issuance of ad valorem tax bills is similarly insufficient, may authorize the tax collector to withhold issuance of supplemental bills and refunds until issuance of the next year's tax bills. At that time the amount due or the refund amount shall be added to or subtracted from the amount of current taxes due on each parcel, provided that the current tax and the prior year's tax or refund shall be shown separately on the bill. Alternatively, at the option of the tax collector, separate bills and statements of refund may be issued. In addition, the court may find that the implementation and administration of a reconciliation between the interim and final rolls or that the preparation of a final roll is not in the best interest of the public. Upon so finding, the court may enter an order confirming taxes levied against interim assessments to be final for the year in question; property appraisal adjustment board petitions may then be filed with respect to interim assessments, and delinquent provisional taxes shall then be subject to the provisions of chapter 197.
(emphasis supplied.)
[7] It filed only a motion for continuance which was silent as to the constitutional infirmity of the interim roll and the resultant inapplicability of paragraph ten of the judgment to the facts of this case. The first record reference of any mention of the problem by the Department appears to be in a post-hearing memorandum of law.
[8] These findings included such tangible concerns as costs of reconciliation and the effects thereof, administrative capability and substantial and harmful interference with the roll for the following year.
[9] The Department raises a question in its briefs which we wish to address for whatever benefit our analysis may have in resolving future disputes when an interim roll, contrary to this one, is constitutionally assessed and is judicially approved as the final roll, although disapproved by the Executive Director of the Department of Revenue for reasons other than constitutional ones. The question in such case is whether resident taxpayers would receive their increased homestead exemption for that year in the absence of such express approval of the roll by the Department, notwithstanding the absence of constitutional issues. It seems to us they would receive it. As discussed earlier, article VII, section 6(d) of the Florida Constitution states that "[b]y general law and subject to conditions specified therein, the exemption shall be increased... ."

Section 196.031(3)(e), Florida Statutes (Supp. 1980), which implements the exemption, recites that the increase is applicable to five-year residents but shall not apply until the roll receives the approval of the Executive Director of the Department of Revenue pursuant to section 193.114. The Legislature, however, adopted Senate Joint Resolution No. 4-E, which authorized a statement to be placed on the ballot voters were to consider in 1980. The statement was to read, in part:
The increase is contingent upon assessment rolls being in compliance with constitutional assessment requirements and upon the continuation of those requirements.
If we interpret section 196.031(3)(e) literally and disregard the foregoing statement intended to be on the ballot, then the increased homestead exemption could still be lost to the resident taxpayer. Apparently that was the conclusion of Pajcic, Weber, and Francis, supra note 4, at 624, who wrote:
Reconciliation can be waived by the circuit court if it is determined not to be in the best interest of the public. An implication of this decision to waive reconciliation is the loss of the increased homestead exemption for non-school taxes during that taxable year since the exemption increase is not applicable to a tax roll that has not been approved by the Department.
Under this analysis, should a trial court, knowing the interim roll passes constitutional muster, still waive reconciliation, a strict reading of section 196.031(3)(e) would compel denial of the increased exemption. Although we believe the Legislature could properly deprive a taxpayer of the increase because article VII, section 6(d) allows lawmakers to impose conditions in the general laws they pass, we conclude, nevertheless, that judicial "approval" of an interim roll would entitle the taxpayer to the increased homestead exemption for two reasons. First, the recitation in section 196.031(3)(e) differs from the statement intended on the ballot. If the Legislature wanted to tell the voters that the exemption was forthcoming, assuming the rolls complied "with constitutional assessments," then we believe a literal construction of the statute would thwart Legislative intent. The Legislature wanted property appraisers to assess on the basis of just valuation and to comply with the constitution, nothing less. If a roll meets the constitutional requirements, we have to believe judicial approval will give efficacy to Legislative intent. Second, our conclusion finds support in two other statutes enacted in 1980. Section 193.114(7), Florida Statutes (Supp. 1980), says:
Approval or disapproval of all or any part of a roll shall not be deemed to be final until the procedures instituted under s. 195.092 have been exhausted.
The other, section 195.092(2), Florida Statutes (Supp. 1980), provides that the Property Appraiser or the Department of Revenue may initiate an action against each other. The former may proceed
to contest the validity of any rule, regulation, order, directive, or determination of any agency of the state, including, but not limited to, disapproval of all or any part of an assessment roll or a determination of assessment levels.
Accordingly, for whatever assistance our analysis may give, we believe judicial approval would entitle the taxpayer to the homestead exemption.
[10] Florida Rule of Appellate Procedure 9.310(b)(2) provides:

The timely filing of a notice shall automatically operate as a stay pending review, except in criminal cases, when the State, any public officer in an official capacity, board, commission or other public body seeks review; provided that on motion the lower tribunal or the court may impose any lawful conditions or vacate the stay.
[11] Section 197.0161, Florida Statutes (1979), provides:

Except as provided in s. 197.0168 with regard to deferred payment tax certificates, interest to be accrued pursuant to this chapter shall be calculated on a monthly basis from the first day of each month. Certificate holders shall draw no interest during the period of time the 3 percent mandatory charge under s. 197.062(3) is in effect.
[12] See also section 197.016(1), Florida Statutes (1979), which provides:

Tax collectors are required to make all collections before April 1 following the year in which the taxes were assessed. All taxes collected shall be delivered forthwith to the governmental unit levying the tax. All unpaid taxes upon real and personal property shall become delinquent on April 1 of the year following the year in which the taxes were assessed. Real property taxes shall bear interest at the rate of 18 percent per year from that date until a certificate is sold, from which time the interest rate shall be as bid by the buyer. Delinquent taxes on real property may be paid after April 1 but prior to the sale of a tax certificate by paying all taxes, costs, advertising charges, and interest. Personal property taxes shall bear interest at 18 percent per year from April 1 until paid or barred under chapter 95.
[13] Although no testimony was taken at the hearing before the trial court, the Director of the Revenue Collection Division represented without objection that the notice required by section 193.1145(10)(a) had been sent.

It should be noted further that section 197.056(1), Florida Statutes (1979), provides in part:
All owners of property shall be held to know that taxes are due and payable annually and are charged with the duty of ascertaining the amount of current and delinquent taxes and paying them before April 1 of the year following the year in which taxes are assessed.
[14] We fail to see the appropriateness of such equitable consideration. This order concerns only delinquent taxpayers, i.e., those who failed to pay their taxes prior to April 1 following the year of assessment. In Broward County that meant paying 1980 taxes before April 1, 1981, based, for most purposes, on 1979 valuations. The court further expressed concern that the provisional taxpayer could not initiate a petition before the Property Appraisal Adjustment Board until the interim roll was finalized. Again, as this order deals only with the delinquent taxpayer who has not paid his taxes, we fail to share the concern. The present system is based upon timely, good faith payments of taxes. Accordingly, in order to maintain a judicial action which contests a tax assessment, the taxpayer must pay all taxes, which he admits in good faith to be owing before they become delinquent. Section 194.171(4), Florida Statutes (1979). We further note that appearance before the Board could be considered an impediment rather than as an avenue of relief, and section 194.032(3), Florida Statutes (Supp. 1980), authorizes a taxpayer to proceed judicially without the necessity of a petition to the Board.
[15] Section 197.0125, Florida Statutes (Supp. 1980), provides:

In the event that the delinquency date for ad valorem taxes is later than April 1 of the year following the year in which taxes are assessed, all dates or time periods specified in this chapter relative to the collection of, or administrative procedures regarding, delinquent taxes shall be extended a like number of days.
[1] Department of Revenue v. Markham, 7 Fla. L.W. 2259 (Fla. 4th DCA Oct. 22, 1982).
[2] In this case the property appraiser's chief deputy testified that mailing of assessment notices would cost $133,000 and estimated additional labor costs of "contemplated" taxpayer administrative appeals would be $160,000. The county's finance director testified its cost of reconciliation to be in the area of $300,000 "plus or minus probably $100,000."
[3] The timing of the motion in March, 1981, obviously exacerbated the concerns described hereinabove. The record is silent as to the actual time required for compliance with the directive issued by the Executive Director of the Department of Revenue, commencing with its receipt in December, 1979.
[4] These included its findings that single family and condominium properties would be taxed additionally; that many individual taxpayers had based their budgets on the interim roll; and that uncertainty works to the detriment of the public.
[5] The Department of Revenue called the property appraiser and his chief deputy as adverse witnesses. They were asked whether, in their opinions, the roll approved by the executive director was based on just valuation. They both answered affirmatively, giving no reasons therefor nor being asked to do so. The chief deputy, although acknowledging the property values, other than for school purposes, were $5,000,000,000 greater in the approved roll than in the interim roll, nevertheless additionally opined that the interim roll was based on just valuation because the latter "was the equitable basis" on which to levy taxes. Although the parties further suggest that the property appraiser rendered a similar opinion as to the interim roll, the transcript of the hearing is inconclusive and well may reflect nothing more than repeated inquiry as to whether the property appraiser had an opinion and his repeated response that he had  not what the opinion was. It surely is void of any basis therefor nor any underlying facts in support thereof.

Further, the trial court never relied on any of the foregoing opinions nor did it rule on the governing constitutional question raised in the Department of Revenue's post-hearing memorandum. Its order does not mention the phrase "just valuation," although we perceive it to be the key to the entire case.
[6] In Burns v. Butscher, 187 So.2d 594 (Fla. 1966), which was reaffirmed in District School Board of Lee County v. Askew, 278 So.2d 272, 274 (Fla. 1973), the supreme court announced a principle that is still very important to the people of Florida in view of the continued existence of homestead exemption:

[A]ssessments of a level below 100% cannot be tolerated.